# DECISIONS

OF THE

# SUPREME COURT OF MISSOURI,

AT

JULY TERM, 1843.

---

### WILSON, by his next friend, *vs.* COCKRILL.

A. gave to B., his granddaughter, certain slaves, and to C., his grandson, certain other slaves. The instrument of the gift was a deed, providing, that if either the said B. or C. should *"die without heirs,"* then the property of the one so dying should absolutely vest in the other. B. died without leaving any children: *Held,* that the gift was an entire disposition of the property of the donor in the slaves, and that the limitation over, being to take effect after such disposition, was void.

*Quære*—Whether the limitation over would have been valid had the same been created by will, or conveyance under the statute of uses.

### APPEAL from Howard Circuit Court.

Leonard, *for Appellant.*

The record presents two general questions for the consideration of this Court: First, Did the grantor intend that the appellant, William Wilson, should take any, and if so, what interest in the slaves, in the event that has happened?

Second, Do the rules of law prohibit such an interest as was contemplated by the grantor, from being created in personal property, by a conveyance *inter vivos?*

*First Question :*

This is a pure question of intention, and for the appellant it is insisted—

1st: The plain intention of the grantor, as manifested by the deed, uncontrolled by technical rules of construction, was to give the particular slaves designated to his granddaughter, Juliet Wilson, forever, determinable, however, upon her dying in the life-time of her brother William, without children living at the time of her death; and in the event of her so dying, then over to her brother absolutely; and that the same limitation should prevail in relation to the slaves given in the first place to his grandson, the appellant.— Parkhurst *vs.* Smith, Willes' Rep. 332 ; 2 Blackstone's Com., 379 ; Preston's Touchstone, vol. 1, 170–176 ; Law Library, number for Nov., 1840, 170 and 179.

1

2d: There is no rule of law requiring the court to give, in this case, such a technical construction to the word "heirs," or the expression, "if either shall die without heirs;" as will defeat the real intention of the grantor.

The word "heirs" may, and, if the intent be manifest, must be construed "children."—Fearne on Cont. Rem., 467, (side-paging) ; Tyte *vs.* Willis, Cas. Temp. Talb., 1 ; Morgan *vs.* Griffith, Cowp. Rep., 234 ; Moffatt's Executors *vs.* Strong, 10 John. Rep., 12 ; 4 Cruise's Dig. on Real Prop., title 32, ch. 21, sec. 25, 26, and 27 ; Plond, 53 and 541 ; Beck's case, Lit. Rep., 344 ; Leigh *vs.* Brace, 5 Mod. Rep., 266 ; 1 Ld. Raym., 101.

In dispositions of personal property, the words, "die without children, or issue," or other equivalent words, are interpreted to import a dying without children living at the death of the first taker, and not an indefinite failure of issue.—Forth *vs.* Chapman, 1 P.Wil., 663 ; Kerby *vs.* Fowler, 6 Bro. P. C., 309 ; Wilmot's Opinions, 308, 309 and 314, (cited in 16 John. Rep., 386) ; 2 Ves., sen., 180 ; 2 Atk., 288 ; Crook *vs.* De Vandes, 9 Ves., jun., 196 ; Dew *vs.* Spenton, Cowp., 410 ; Goodtitle *vs.* Pegden, 2 T. Rep., 720 ; Atkinson *vs.* Hutchison, 3 P. Wil., 258 and note 1 ; Brasheur *vs.* Macy, 3 J. J. Marshall, 91 ; Rathbone *vs.* Dychman, 3 Paige Rep.; Moseby's Adm. *vs.* Corbin's Adm., 3 J. J. Mashall, 289 ; Moore's Trustees *vs.* Howe's Heirs, 4 Mon. Rep., 202 ; 4 Kent's Com. (fourth edition), 281 ; Hawley and Another *vs.* Northampton, 8 Mass. Rep., 39 ; Targett *vs.* Grant, Gil. Eg. Rep., 149 ; Atkinson *vs.* Hutchison, 3 P. Wil., 258.

The New York courts have given the same construction, even when applied to real property.—Anderson *vs.* Jackson, 16 John. Rep., 382, (same case); Fosdick *vs.* Cornell, 1 John. Rep., 440 ; Jackson *vs.* Blansham, 3 John. Rep., 189 ; Jackson *vs.* Staats, 11 John. Rep., 337 ; Anderson *vs.* Jackson, 16 John. Rep., 382, (same case); Jackson *vs.* Chew, 12 Wheat, 153.

Even where the expression is construed to mean an indefinite failure of issue, very slight circumstances are seized hold of by the courts to give the words their natural meaning.— Pells *vs.* Brown, Cro. Jac., 590 ; "Ewing, William," (Porter *vs.* Bradley, 3 T. Rep., 143,) "leaving no issue behind him :" Roe *vs.* Jeffry, 7 T. Rep., 589 ; "should depart this life and leave no issue :" Dunn *vs.* Bray, 1 Call, 388 ; "should die and leave no issue :"  Timberlake & Wife *vs.* Graves, 6 Munf., 174 ; "to I. A. and his heirs forever, but if he die without heir, then to be divided between two sisters of I. A.:"  Gresham *vs.* Gresham, 6 Mun. Rep., 187, "to his brother I., and in case he died without issue, to A. and B. (his brother's children) :" Didlake *vs.* Hooper, Gil. Rep., 194 ; "if he die without issue, I give the whole of the property that I have lent him to S. and I :" James *vs.* McWilliams ; "to two daughters, provided, if either die without lawful issue, her part to go to the other :" Cordle's Adm. *vs.* Cordle's Adm., 6 Munf., 455 ; " to two sons, and if either die without lawful heir, the surviving brother to inherit the estate of the deceased :" 1 Tucker's Com., 164, 165.

And so, if the general rule be adopted and applied to the construction of this deed, there is enough on the face of it to confine the want of issue to the time of the death of the first taker.— See cases last above cited.

The rule, that the same words which, when applied to a disposition of real estate,

create an estate tail, will, when applied to personal property, vest the absolute interest in the first taker, does not apply to the words, "dying without issue," or other equivalent words, that only create an estate tail by implication.—Atkinson *vs.* Hutchison, 3 P. Wil., 259.

In England, (1 Victoria, c. 26); Virginia, (Statutes of 1819), Mississippi, (Rev. Code, 1824,) and other States of this Union, the unnatural judicial construction of the words, "dying without issue," has been repealed by express statutes on the subject, and the words restored to their natural meaning.—4 Kent's Com., (fourth edition), 278, 279.

*Second Question:*

First, There is no rule of law prohibiting the existence of such a contingent interest in personal property as the grantor intended to vest in the appellant in the present instance.—2 Chitty's Black. Com., 398; 2 Kent's Com., (4th edit.), 352; Higginbotham *vs.* Rucker, 2 Call's Rep., 313; Powell *vs.* Brown, 1 Bailey's S.C. Rep., 100; Moffatt's Executors *vs.* Strong, 10 John. Rep., 12; Smith *vs.* Bell, 6 Peter's Rep., 72.

Second, Or prohibiting the creation of such an interest by a disposition *inter vivos.*—Higginbotham *vs.* Rucker, 2 Call's Rep., 313; Keen & West, *vs.* Macy, 3 Bibb. Rep., 39; Wright *vs.* Cartright, 1 Bur. Rep., 102; Powell *vs.* Brown, 1 Bailey's S. C. Rep., 100; (cited in note in 2 Kent's Com., 362, fourth edition.)

Davis, Todd, *and* Kirtley, *for Appellee.*

The defendant relies upon the following points, to sustain the opinion of the Circuit Court.

First, The word "heirs," as used in the deed of gift, cannot be restricted by parol evidence to mean heirs of the body, or issue.

Upon this point, see the following authorities, to wit: 3 J. J. Marshall, 238; 1 Phillips' Ev., 480; 3 Starkie on Ev., title, "Parol Evidence," 996, and cases there cited; Lane *vs.* Price, 5 Mo. Rep., 101.

Parol evidence cannot be received, to change the legal effect of the deed.—See 3 Starkie, 1011.

Second, Whether the word "heirs," as used in the deed, is to have its usual and legal signification, or is to mean issue of the body of Juliet, the limitation over to the plaintiff is void absolutely.

No such limitation of personal property, by deed, ever was allowed to be good at common law.—See Betty *vs.* Moore, 1 Dana's Ky. Rep., 235.

That case was a gift of a slave, conditioned that the slave revert to the donor if the donee die without children; and the condition held to be void and the gift absolute; and that case was decided upon the authorities following, to wit: 3 Coke on Littleton, 20; a note, 120; 2 Black. Com., 112 and 398; Roper on Legacies, 204; Fearne on Remainders, 460; also, see pages of same, 445, 471, 478 and 482.—And,

Thirdly, "If the word "heirs," as used in the deed, is construed to mean issue of the body of Juliet, it is then an estate-tail general which she takes in the slaves, and by the rules of the common law she is vested with the absolute property in the slaves, as no remainder ever could be limited after an estate-tail in personal

property.—See 2 Black. Com., 113, and note 7 at that page, where it is declared, that after such a gift or grant, either by deed or will, the first taker becomes vested with the absolute property, and that all subsequent limitations are null and void: see also 2 Kent's Com., 286; 6 Cond. Peter's Sup. Court Decisions, 651; Williamson et al. *vs.* Daniel et al.; Fearne on Remainders, 463, and authorities there cited.

The gift to Juliet was a fee conditional at common law, if the natural meaning of the word "heirs" is to be restricted to mean "issue of her body," which by the statute *de donis* makes it an estate-tail, which the Virginia statute converts into an absolute estate in fee-simple.— See Griffith *vs.* Thompson, 1 Leigh's Va. Rep., 321; 3 Leigh's Va. Rep., 106; Calava Bryant et al. *vs.* Pope.—The case of Griffith *vs.* Thompson, by the Court of Appeals of Virginia, in 1829, was relative to a remainder in slaves limited to take effect after a dying without issue, (by will), and in that case all the cases are reviewed, and the result is, that even by will, a remainder which may not take effect within a life or lives in being twenty-one years and about ten months thereafter, never was allowed by the policy of the law, and that wherever it appears by the will that the event upon which the remainder is limited to take effect may not happen within the period above-mentioned, that then the limitation is void in its creation, and the absolute property is in the first taker. See, also, Fearne on Remainders, 445.—That " a dying without issue" is settled in England and the United States to mean an indefinite failure of issue, see Fearne, and the authorities above cited.

Additional authorities on first point:—

Watson et al. *vs.* Boylston, 5 Mass. Rep., 416: "For as there will be no latent ambiguity in the deed, the averment of extraneous matter will tend not to *explain*, but to *control* that instrument which cannot be admitted."—Same case : "But we can judge of his intent only by his language. The words of the deed are his own;" 418.

5 Mass. Rep., 93; Revere *vs.* Leonard: "And that it was against every legal principle to go out of the deed itself, by an inquiry into existing facts, to ascertain the meaning of *those* and *such like* words, there being in them no ambiguity of any kind; that what their meaning is was merely a question of law, of which the court are to judge by the words themselves."

5 Mass. Rep., Payne *vs.* McIntire, 69 : "Parol evidence is inadmissible to *explain* a deed, unless it contain some *latent ambiguity*."

7 Mass. Rep., King *vs.* King, 500 : "As to the motion for the admission of parol evidence to control or aid in the construction, the court are unanimous in the opinion, that it was justly overruled at the trial. The evidence, if admitted, must have been employed upon a question of legal construction and operation of a written contract expressed without any reference to extraneous circumstances, or any latent ambiguity."

6 Mass. Rep., 440; Storer *vs.* Freeman : "Unquestionably he could give no parol evidence either to contradict the deeds, or to explain any patent ambiguities."

8 Mass. Rep., Albee *vs.* Ward, 83 : "For it is a well-known rule of law, that parol evidence is not admissible to vary the meaning of a deed, or to explain that which is apparent upon the face of it."

8 Mass. Rep., Townsend *vs.* Weld, 147: "This was an attempt to control the effect of a written and sealed instrument by parol evidence, which is never permitted."

Scott, J., *delivered the opinion of the Court.*

This was an action of replevin, instituted by the appellant, plaintiff, against the appellee, defendant, for a slave named Sally, in which the appellant submitted to a nonsuit, and, after a refusal by the court below to set aside, appealed to this Court.

It appears that Micajah Woods, in consideration of the love and affection which he bore his grand-children, Juliet Walker Wilson and William Henry Wilson, gave unto the said Juliet W. Wilson, her executors, administrators, and assigns, one negro woman, Malinda, and three of her children, one boy, Allen, and two girls, Sally Anderson and Mary Ann; and in like manner he gave to William H. Wilson three other children of the above-named woman Malinda, viz., one girl, Queen, and two boys, Alexander and Reuben; to have and to hold the said negroes unto them, the said Juliet W. and William H. Wilson, their executors, administrators, and assigns forever: but should either the said Juliet W. or William H. Wilson die without heirs, then the property of the one so dying shall absolutely vest in the other. The instrument of the gift was a deed. The appellant is one of the donees mentioned in the deed. Juliet W. Wilson, the other donee, intermarried with Alfred Mann, and after being delivered of a dead child, died herself in child-bed, leaving no children. The slave Sally, for which the suit was instituted, is the same named in the deed of gift, and given to Juliet W. Wilson. Mann, after his marriage, and before the death of his wife, sold the said slave to the appellee, Cockrill.

Micajah Woods, the donor, was a resident of Albemarle county, Virginia, and executed the deed of gift to his grand-children on the eve of their departure from his home, where they had lived since the death of their mother. They left their grandfather's house for the purpose of coming to this State, where their father had resided for a number of years, and by whom they were sent for.

On one part it was maintained, that the appellant, the surviving donee, was entitled to the slave in dispute, by virtue of that clause in the deed of gift which provides, that, if either the said Juliet W. Wilson or William H. Wilson shall die without heirs, then the property of the one so dying shall vest absolutely in the other.

On the other hand it was contended, that the limitation over, being after an indefinite failure of heirs, was too remote, and therefore void; consequently, that the entire property in the slaves vested in the first taker: that if the limitation over was not too remote, and could be construed so as to bring it within the period the law allows an estate to vest, viz., a life or lives in being twenty-one years and some months, yet such contingent interests can only be created by a will or conveyance under the statute of uses, and not by a common law conveyance.

It was a principle of the common law, that no person but the feoffor, or grantor, and his heirs could take advantage of the breach of an express condition or conditions created by deed; hence, if a freehold estate be conveyed to one, and words

of condition be used, and there be a limitation over to a third person, in case the condition be broken, yet upon breach of the condition, the feoffor, or grantor, or his heirs must enter, in order to avoid the estate: for whatever estate was created by livery could only be defeated by entry, and to permit him, the commencement of whose estate depended upon a breach of the condition, to enter, in order to take advantage of it, was allowing the assignment of a chose in action, which, for the purpose of preventing maintainance and oppression, the common law forbade.   It was also a rule, that when the feoffor, or grantor, entered to take advantage of a breach of a condition, his entry defeated the livery made at the commencement of the estate, and all subsequent estates depending on the first were thereby defeated and gone: hence the principle, that a remainder, properly so called, cannot be limited by a common law conveyance to take effect upon a condition which is to defeat the particular estate.   Inasmuch as such limitations were, however, found exceedingly convenient in making provisions for families, they were afterwards allowed, when created by will or conveyance under the statute of uses, by the denomination of executory devises and conditional limitations.

The authorities are all united in declaring that interests similar to that claimed by the appellant in the slave in controversy, which is a remainder limited to take effect after a disposal of the entire property in the thing by the grantor, can only be created by a conveyance operating under the statute of uses, or by will. (4 Kent, 128; Fearne, 10, 391; Tucker's Com., 90, 144.)   Judge Tucker remarks, that Blackstone, vol. 2, pp. 155, 6, puts the case of a conditional limitation by a common law conveyance, and cites Fry vs. Porter, Ventris, 202, as an authority in support of such a mode of limitation; but he observes, all the elementary writers state the case as a devise, and Kent refers to the same case as an authority for the position, that conditional limitations, though not valid in the old conveyance at common law, yet within certain limits they are good in wills and conveyances to uses.

It was insisted by the appellant, that the intention of the grantor was to give the slaves to Juliet W. Wilson forever, but if she died without leaving children at her death, then they should go to the appellant, if he survived.

It may be admitted, that such was the intention of the grantor.   When a donor has such an intent, and wishes to have it effected, the law has prescribed particular modes or forms in which that intent must be expressed, otherwise it cannot be regarded.   The grantor by deed gave an absolute interest in property to one, and after thus parting with all his estate, wished to give a right to the same property to another, upon the happening of a certain event.   That wish, in order to be carried into effect by the courts of law, must be expressed in one of two modes.   The grantor has not adopted either of the modes required by law; his intentions, therefore, cannot prevail.—Betty vs. Moore, 1 Dana, is a direct authority upon this point.

Butler says, (Thomas' Coke, 2d vol., p. 761, 2,) "Executory devises originated in the indulgence shown to testators in effectuating their intentions, whereby the judges were induced, in cases of wills, as well as in limitations of uses, to dispense with the strict rules of the common law, according to which no remainder could be limited over after an estate in fee-simple, nor a freehold be created to commence in future: an executory devise or bequest is, therefore, such a limitation of a

future estate, or interest in lands or chattels, as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law."

In the case of Jackson vs. Anderson, (16 I. Rep.,) the principle is stated, that in construing limitations, we are to look at the words of the instrument by which they are limited, and no circumstance transpiring subsequently affecting the limitees is to have any weight in ascertaining their validity. If, by the words of their creation, they may possibly endure forever, they are considered as estates in fee, though in fact they may terminate in less time than a life in being. If the limitation over to William H. Wilson be tested by this rule, it is impossible to say that Juliet W. Wilson did not take an estate in the slaves which might endure forever, consequently it was an estate granted after the disposal of the grantor's entire interest in the property, and therefore could not be made by deed or conveyance at common law.

Not one of the many cases produced in support of the claim of the appellant, except the case of Higginbotham vs. Rucker, (2 Cull,) arose on the construction of a common law conveyance. The limitations in all of them were by will or conveyance under the statute of uses. The question did not arise in the case of Higginbotham vs. Rucker, if the limitation in that case was made by deed; and so we may infer, from the report of it, the objection was not made, and no opinion was expressed in relation to it. The other cases cited by the appellant, to show that such an interest as he claims in the slave in dispute may be created by a common law conveyance, or, which is the same thing, by deed,—Keene & West, vs. Macy, 3 Bibb, 39; Wright vs. Cartright, 1 Burr, 162; Powell vs. Brown, 1 Bailey's S. C. Rep., 100,—are authorities in support of the principle, that chattels may be limited by deed to one for *life* with remainder over to another, and the limitation over, after the life-interest in the chattel has expired, is good. By the ancient common law, there could be no limitation over of a chattel, but the gift for life carried the entire interest. This rule was relaxed at first in favor of wills, and afterwards such limitations were permitted by deed.

We do not wish to be understood as expressing the opinion, that the limitation over to the appellant would have been valid had the same been created by will or conveyance under the statute of uses: conceiving that the question does not arise, we express no opinion in relation to it.

We are not clear, under the circumstances stated in the record, that the validity of the limitation contained in the deed should be determined by the laws of Virginia.

Even should the laws of that State govern us in ascertaining whether it is allowable or not, the counsel of the appellant did not maintain that they are different from those which prevail in this State.

The doctrine, as established in New York and Massachusetts, is, that the courts will not take judicial cognizance of any of the laws of our sister States at variance with the common law, but upon common law questions, the legal presumption is, that the common law of a sister State is similar to that of our own.—10 Wind., 75; Holmes vs. Broughton.

Judgment affirmed.

*Note.*—This case was argued at Boonville at the Fall term, 1842. Judge Napton, in consequence of indisposition, was absent from the bench.