PEMBERTON *et al.*, Respondents, v. PEMBERTON, Appellant.

1. A parol gift of a slave to one for life, remainder to her children, then living, followed by the possession of the donee for life, is valid.

*Appeal from Calloway Circuit Court.*

The case is stated in the opinion of the court.

*J. F. Jones,* for appellant; that a remainder in personal property could not be limited by parol; cited 1 Black. Comm., 398, and note 11; 1 P. W'ms., 290; 2 Kent's Comm., p. 352, and notes; 13 Conn. Rep., 42; Cro. Jac., 459; 1 Bailey's (S. C.) Rep., 100; 1 Dana, 237; 3 Dev. (N. C.) Rep., 263; 10 Johns. Rep., 11; 11 Wend., 259; 4 Kent's Comm., 264; Fearne on Remainders, 460, 461, 463, 464, and notes; 2 Vesey, Sr., 171; Pollexfen, 29; 6 Ves., Jr., 440; 11 Ves., Jr., 257; 2 Ves. and Beames, 63; 19 Ves., Jr., 73; 1 Merivale, 20; Ib. 271; 2 Roper on Legacies, (2d ed.,) 393; 1 Ves., Sr., 133, 134.

*Thomas Ansell,* for respondent, cited 2 Hall, 543; 2 Strob. Eq., 243; 3 Murph., 493; 3 Mon., 276; 3 Bibb, 40; 2 Kelly, (Geo.,) 207; 2 Bouvier's Inst., 294-5; R. C., 1845, p. 588.

RYLAND, Judge, delivered the opinion of the court.

Nehemiah Hundley gave to his daughter Susan Pemberton, then the wife of Edmund Pemberton, and the mother of the plaintiffs, in January, 1842, a certain negro woman named

Abigail, and her increase. The words of the old gentleman, for it was a verbal gift, are, "I then gave Susy Pemberton, my daughter, Abigail and her increase, for life, and at her death, for her and her increase to be equally divided among her children." "I sent Abigail the next morning to Susy Pemberton." Susan Pemberton, the mother of the plaintiffs, died in the year 1846, and her husband, Edmund, died in October, 1853.

Edmund Pemberton, after the death of his wife Susan, married again, and the defendant in this action is his widow. This suit is brought to recover a negro boy named Lewis, a child of the said negro woman Abigail, in the possession of the defendant, and claimed by her under the will of said Edmund Pemberton.

The question involves the validity of this disposition of the negro woman Abigail and her increase. Is such a disposition of a slave, without writing, good, in favor of the children after the death of the mother? The circuit court held that it was, and the defendant brings the case here by writ of error.

The statute of 1835, concerning gifts of slaves, is as follows : "Article III, section 1. Slaves shall be held, taken and deemed to be personal property. Section 2. No gift of any slave shall pass or vest any right, estate or title in or to such slave in any person or persons whatsoever, unless the same be made— 1st. By will duly proved and recorded; or 2d. By deed in writing, to be proved by not less than two witnesses, or acknowledged by the donor, and recorded in the county where one of the parties lives, within six months after the date of such deed. Section 3. This law shall only extend to gifts of slaves, whereof the donors have, notwithstanding such gifts, remained in possession, and not to gifts of such slaves as have at any time actually come into the possession of, and remained with the donee, or some person claiming under such donee."

From this statute, it is obvious that a parol gift of a slave accompanied by possession, like the gift of any other kind of personal property accompanied with possession, is good and

valid. Such a gift needed no writing, neither deed nor will, to be a valid act, passing title from donor and vesting title in donee; all that is necessary in such gifts, made *bona fide*, is the possession of the gift by the donee. So far then as respects the gift of Abigail, the negro woman, by Mr. Hundley to Mrs. Susan Pemberton, his daughter, in this case, it is beyond controversy good and valid; for possession immediately accompanied the gift and remained with the donee.

Was it in the power of the donor to make this gift to his daughter for life, and then to become the property of her children? The children in this case were alive at the time the donation was made to their mother for life, and to them after her death. This donation gave to the mother a life estate, and a vested remainder to her children. The delivery of the possession to the mother, the tenant for life, was a delivery, *pro hac vice*, to her children.

The question arising in this case has been virtually settled by this court, in the case of Halbert v. Halbert and others, decided at July term, 1855, (see 21 Mo. 277.) There a father gave to his son a slave, upon the condition, that if the son died without leaving issue the slave should revert to the father—a parol gift. The circuit court decided, in an action brought by the father for the slave, after the death of the son without leaving any child living, that the gift to the son, accompanied by the possession, conveyed the absolute property in the slave to the son, and that the plaintiff could not recover. This court reversed that decision and remanded the case; remarking, that one question of inquiry before the jury was, whether the transaction was a gift; and if it was a gift, whether it was absolute or qualified; and if qualified, what was the qualification annexed to it; was it a condition that the slave should be the son's, if he had children born to him? or was it a provision to transmit the slave to the son's descendants, as long as there should be any descendants; and to secure a return of the slave to the giver upon a failure of descendants, whenever that event should occur? We had actually remarked, that if it were the

former, it would be a lawful purpose and must prevail; if the latter were the intention of the father, the law will not carry it into execution, but makes the grant take effect as an absolute immediate gift of the whole property to the son.

In the case of Keene and West v. Macey, (3 Bibb, 30,) the court of appeals of Kentucky held, that when A. gives slaves to W. for life, with remainder to the children of W., the remainder was good. In this case, it appeared that Cornelius Duvall executed a bill of sale, disposing of certain negroes, of which he was the rightful owner, to his daughter, Esther West, during her natural life, and after her decease to be equally divided between such of her children as might be then living. Esther West died leaving Vandever West, and the wife of Keene, two of her children then living. West and Keene being possessed of part of the negroes, Macey, claiming by purchase from Rezin West, the husband of Esther, brought an action of detinue against them for the negroes in their possession. *Non detinet* was pleaded, and issue joined thereon. On motion of Macey, the circuit court instructed the jury, that the remainder over of the slaves to the children of Esther West was void; that the sole and absolute property in the negroes passed by the bill of sale to Esther West, and that by operation of law the right thereto accrued to and became vested in her husband Rezin West, under whom Macey claimed title. Macey recovered, and the case was taken to the court of appeals. By the 33d section of the act of 1798, respecting slaves, it is enacted, that no remainder of any slave or slaves shall or may be limited by any deed or last will and testament, in writing of any person whatsoever, otherwise than the remainder of a chattel personal, by the rules of the common law, can or may be limited.

The court observed, the only question involved in the determination of this cause is, whether, by the rules of the common law, a chattel could be granted to one for life, with a limitation in remainder to another? It was anciently held, that chattels in their nature were incapable of any limitation over, and that a grant or devise of them, but for an hour or a min-

ute, was a gift forever. Hence, it was a long time before courts of justice could be prevailed upon to have any regard for a devise over, even of a chattel real or term for years, after an estate for life limited therein; and to get out of the literal authority of the old cases, a distinction was formerly taken, that a remainder might be limited for the residue of the years, but not for the residue of the term. But by a train of adjudged cases, that distinction does not now exist. And the remainder of a term, or of a personal chattel, may be limited by will, whether the term or the lease, or the use and occupation of the land, or the lands themselves, or the use of the chattel, be bequeathed. (3 Saund. 388, note 9 h., and authorities there cited.) To answer the agreement of parties and the exigencies of families, the same reason required that such limitations might be made by deed. (Wright v. Cartwright, 1 Burrow, 292.) Blackstone, in his commentaries, 2 vol. 398, acknowledges, that by the ancient rules of the common law, there could be no future property to take place in expectancy created in a personal chattel; but says, if a man now, either by deed or will limits furniture, &c., to A. for life, remainder over to B., it is good. In Higginbotham v. Rucker, (2 Call, 313,) the court of appeals of Virginia decided, that a gift of a slave to one for life, with a remainder to his children, was a good limitation.

The court then reversed the judgment of the circuit court for the wrong instruction given, thereby maintaining that the remainder to the children was good. Here the remainder was to the children living at the death of their mother, Esther West. In the case at bar, the remainder was to the children of Susan Pemberton, then living, at the date of the gift—not to such as should be living at her death. "I gave Susy Pemberton, my daughter, Abigail and her increase, for life; and at her death, for her and her increase to be equally divided among her children." The children of Mrs. Pemberton, the present plaintiffs, were then in the mind of the donor. He knew them, and they were the objects of his bounty ultimately.

This case does not present the question of a donation to take place in future, the donor retaining the use and possession for his life. Here is nothing but a simple donation of property to persons in being, the one to have it for life, and the others to have it after the first taker's death; and where, in such gifts, the possession accompanies the property in the hands of the donees, there can not be a reasonable objection to their validity. Our statute requires wills or deeds, in such gifts of slaves, where the donor retains possession notwithstanding the gift. It does not require any instruments to be written concerning those gifts, where the property given is immediately delivered to the donee. Now, as by our law such a parol gift of slave is good to the donee when possession accompanies it, and every person has by law the right to make such gifts; where do we find the limitation to this power, to this right to make the gift for the life of one, and at his death to another? He who can give, by parol, the whole estate absolutely, can surely give a life estate to one, and the remainder thereof to another. The only thing necessary to make such a gift good under our law, is possession in the tenant or donee, for life, and that possession shall be construed to be the possession of the remainder man.

In Higginbotham v. Rucker, the father gave to his daughter, after her marriage, certain negroes " to her and the heirs of her body; and in case she died without issue, that is, children of her body, the negroes were to return to the father." This limitation was held by the court of appeals of Virginia to be not too remote, and therefore good. In an action by the father against the husband of his daughter, for the negroes, the daughter having died without issue, the father was permitted to recover. (2 Call's Rep. 313.)

In Brummett v. Barker, decided in South Carolina, in 1834, the donor undertook by parol to give a life estate to his niece with a remainder over, on her dying without leaving issue. Assuming (as well settled) the principle that such limitation by deed would be valid, the court proceeds to discuss the question whether a valid limitation over, after the determi-

nation of a precedent life estate, might not be created by parol; and then decides the question in the affirmative. Judge O'Neall, in delivering the opinion of the court, uses the following language: "There is nothing to prevent a trust in personal property from being created by parol, either written or unwritten, and that, even without resorting to the doctrine in relation to trust of personal property; as it was clear, that any thing that was good and effectual in law to pass personal property, was equally so to limit it." See the elaborate opinion of Chancellor Dargan, in the court of errors of South Carolina, in the case of Daggers v. Estes in 1848; reported in 2 Strob. Equity Rep. 354. In this opinion most of the cases upon this subject have been ably reviewed.

I do not think it necessary to review the cases myself, satisfied that such gifts as the one in this case now at bar, where possession accompanies the gift, are common in our state, and have always been considered valid.

There is no error in the court below in giving the instructions or in permitting the parol evidence of the gift. As to the error assigned in arrest of judgment, it is without a particle of force. It needs no comment from this court.

Judge Leonard, concurring, the judgment below will be affirmed.