CHISM'S ADMINISTRATOR, Plaintiff in Error, v. WILLIAMS, Defendant in Error.

1. The words " die without issue" in a bequest of chattels, made in this state prior to 1845, when used alone as designating the contingency upon which a limitation over by way of executing a bequest is to take effect, mean an indefinite failure of issue, and the contingency consequently being too remote the limitation over by way of executory bequest is void.

2. In order that other additional expressions in the will may override this well settled meaning of the words " die without issue," and make them mean a definite instead of an indefinite failure of issue, they must point incontestably and unequivocally to the death of the first taker as the period contemplated by the testator when the limitation over should take effect.

3. A testator dying in 1832 bequeathed to his daughter Charity a horse, saddle and bridle, feather bed, a cow and calf, and a female slave ; the will contained this further provision : " But here be it fully understood, that if my daughter Charity should die without issue, then and in that case what I have willed and bequeathed to her, it is my will and pleasure that it be given by [my] executors to my daughter Mahala, to be enjoyed by her and her heirs forever." *Held*, that the limitation over by way of executory bequest was void as being upon a contingency too remote, an indefinite failure of issue.

*Error to Howard Circuit Court.*

This was an action for the possession of certain slaves. The plaintiff sues as administrator of Mahala Chism, deceased. At the trial, the plaintiff introduced in evidence the will of Colden Williams, deceased. This will contained the following clauses : " I will and bequeath to my daughter Charity a certain negro woman by the name of Chaney. I also will to my daughter Charity a horse, saddle and bridle, to be worth one hundred and ten dollars. I also will to my daughter Charity one of my feather beds and bed furniture, to be selected for her by my executors." " I also give my daughter Charity a cow and calf to be worth ten dollars ; but here be it fully understood, that if my daughter Charity should die without issue, then and in that case what I have willed and bequeathed to her it is my will and pleasure that it be given by [my] executors to my. daughter Mahala, to be enjoyed by her and her heirs forever." This will was published March 2, 1824. The testator died in 1832. His daughters Charity and Mahala survived him. Mahala married one Chism and died about 1840 or 1841, leaving her surviving a daughter and granddaughter. Charity died in January, 1858, without issue. Said slave Chaney died before said Charity. The slaves in controversy are her children.

The plaintiff asked the court to declare the law to be as

follows: " The words ' should die without issue,' with the expressions and circumstances accompanying said words, used by Colden Williams, deceased, in the bequest by his will to his daughter Charity of the slave Chaney, mean issue living at the death of said Charity and not an indefinite failure of issue; and the limitation to his daughter Mahala is a legal and valid limitation; and by said bequest a life interest in said slave Chaney only passed to said Charity, and the absolute property in said slave Chaney vested in said Mahala; and the plaintiff is entitled to recover the possession of the offspring of said Chaney or their value, with interest on their value at six per cent. per annum from the institution of this suit down to the present time." The court refused so to declare, and found for defendant.

*Douglass & Hayden*, for plaintiff in error.

I. The simple limitation of the slave Chaney to Mahala, should Charity " die without issue," is a valid limitation and not repugnant to any rule of legal construction. The testator meant that Mahala should take the property after a definite and not an indefinite failure of issue. His *intention* alone is to govern. (See Forth v. Chapman, 1 P. Wms. 663; Pleydell v. Pleydell, 1 P. Wms. 749; Pimbury v. Elkin, id. 563; Nichols v. Horper, id. 199; Target v. Gaunt, id. 432; Lyde v. Lyde, 1 T. R. 593; Goodtitle v. Peyton, 2 T. R. 720; Porter v. Bradley, 3 T. R. 143; Doe v. Perryn, 3 T. R. 494; 7 T. R. 589; 3 J. J. Marsh. 89; Moore v. Moore, 12 B. Monr. 653; 4 Kent, 12, 13, 274, 281; Cruise's Dig. tit. Estate Tail, ch. 1, § 23, 27; 8 Mo. 1; 1 Dana, 235; 1 Terr. Laws Mo. p. 436; Geyer's Dig. 125; R. C. 1835, p. 119, § 5; R. C. 1845, p. 219, § 5; R. C. 1855, p. 355, § 5; Dunn v. Bray, 1 Call, 338; Vaughn v. Guy, 17 Mo. 429; Dugan v. Livingston, 15 Mo. 230; Peters v. Carr, 16 Mo. 54; Bills v. Brown, 2 Cro. 590; 2 Jarm. on Wills, 262.)

II. Should this court be inclined to follow the strict, rigid and unnatural rule of construction of the English courts, and the courts of those states where the statute *de donis* has

been adopted as part of their law of property, then, it is contended, there are sufficient additional expressions connected with the bequest to take the case out of that rule. The testator did not mean to convey the idea that his executors should live for an indefinite series of generations, and then that they should give Mahala the slave, the horse, saddle and bridle, the bed, and the cow and calf, and all to be enjoyed by her. Such a construction would be repugnant to common sense. The property bequeathed was perishable. Very slight circumstances should take the case out of the operation of the rigid rule. (See Kent Com. 282; 2 Jarm. on Wills, 317, 324; 1 P. Wms. 563; 3 P. Wms. 258; 2 T. R. 720; 3 T. R. 143; 7 T. R. 589; 1 Johns. 440; 12 Wheat. 153; Anderson v. Jackson, 16 Johns. 382; 10 Johns. 12; Brown P. C. 299; 2 Curt. C. C. 126; 18 How. 202; Halbert v. Halbert, 21 Mo. 283; 1 T. R. 593.) The *additional expressions and circumstances* connected with the bequest in this case, showing the intention of the testator, are not slight, but convincingly strong.

*A. Leonard,* for defendant in error.

I. In reference to the meaning of the words " die without issue," when used in limitations of property, the general rule is that in legal contemplation they import an indefinite failure of descendants, in wills as well as in deeds, and in reference to personal as well as to real property. (See Beauclerc v. Dormer, 3 Atk. 312; Barlow v. Salter, 17 Ves. 481; Campbell v. Harding, 2 Russ. & Myl. 402; Bigge v. Bensley, 1 Brown, C. C. 176; Chandlers v. Price, 3 Ves. 101; Crowder v. Stone, 3 Russ. 222; Porter v. Ross, 2 Jones N. C. Eq. 197; Gray v. Gray, 20 Geng. 804; Moody v. Walker, 3 Ark. 147; 4 Kent, Comm. 284, 294; Vaughn v. Guy, 17 Mo. 431; Halbert v. Halbert, 21 Mo. 278.)

II. In the present limitation there are no expressions or circumstances sufficient to show that the testator used the words in a sense different from that which the law imputes to them; in other words, there is nothing in the present

case sufficient to take it out of the general rule. (See Barlow v. Salter, 17 Ves. 479; Down v. Penny, 1 Mer. 21; Keys v. Chatt. 138; Campbell v. Harding, 2 Russ. & My. 390; 7 T. R. 596; 1 P. Wms. 663, 198, 432, 534, 563; Prec. Ch. 528; 2 Ves. sr. 236.)

NAPTON, Judge, delivered the opinion of the court.

The only matter for consideration in this case is the construction of the will of Colden Williams, made in 1824, in which the testator gave to his daughter Charity a negro woman and some other personal property, and then declared: "But here be it fully understood, that if my daughter Charity should die without issue, then and in that case what I have willed and bequeathed to her, it is my will and pleasure that it should be given by [my] executors to my daughter Mahala, to be enjoyed by her and her heirs forever."

It may be considered as the settled law in England ever since the statute of Wills of 32 Hen. VIII, ch. 1, (1540) that a devise to one in fee, with a limitation over in the event of the first taker dying without issue or heirs of the body, creates an estate tail in the first devisee, and therefore the words "dying without issue" must mean an indefinite failure of issue. There is no conflict of authority in the English cases on this point so far as devises of real estate are concerned. Chancellor Kent says: "The series of cases in the English law have been uniform from the time of Year Books down to the present day, in the recognition of the rule of law that a devise in fee, with a remainder over, if the devisee dies without issue or heirs of the body, is a fee cut down to an estate tail; and the limitation over is void, by way of executory devise, as being too remote and founded on an indefinite failure of issue. This rule of construction, it may be added, has been generally adopted in the United States, and, unless it be in Kentucky, I am not aware that it has been entirely disregarded in any of the states."

This construction or interpretation of the words "dying without issue" was originally established by the statute *de*

*donis* (13 Edw. I, ch. 1, 1285) as applicable to deeds. Where
the will of the donor was to be followed and subsequently to
the passage of the statute of wills (32 Hen. VIII, ch. 1) it
was applied to wills, where the will of the testator was the
rule of construction. It may be considered a parliamentary
interpretation of the words, professedly based upon a design
to carry out the intent of the donor or testator, but really
adopted to carry out the views of public policy indicated by
the law of entails. It is an artificial interpretation of words
contrary to their natural, vulgar and grammatical mean-
ing, and, although the ingenuity of many able judges in
England and of Chancellor Kent, in this country, has been
exerted to support the rule, not merely as a fixed rule of law,
settled by legislation and judicial precedent, but as really
one having a tendency to promote the intention of testators
and donors, the common sense of mankind seems to have
revolted against the course of reasoning, and, both in Eng-
land and in this country, legislative authority has interposed
to restore the words to their natural meaning.

A distinction was taken in England between devises and
bequests of personal property, or rather at first between de-
vises of freehold estates and of terms for years. As terms
for years and other chattels were not within the statute *de
donis*, the policy of that statute did not render it necessary
to give so unnatural and artificial a meaning to the words
" dying without issue" when applied to this species of prop-
erty, as had become their fixed interpretation when applied
to freehold estates, capable of being entailed. A distinction
was therefore attempted to be established in the case of Firth
v. Chapman, 1 P. Wms. 663 ; and it was recognized and fol-
lowed in several other cases. Chancellor Kent seems to
think the distinction was quite a reasonable one, and might
well have been maintained ; (Anderson v. Jackson, 16 Johns.
409 ;) but, after a brief struggle for existence in England, it
seems to have been gradually lost sight of, and to have ulti-
mately amounted to this, that in wills of personal estate the
courts would lay hold of very trivial expressions in the will

to take the case out of the rule. But the rule was conceded in Beauclerc v. Dormer, 2 Atk. 308, as applicable to both personal and real property, and in a number of cases following it, so that Chancellor Kent was of opinion, in 1819, when the case of Anderson v. Jackson was before the court of errors, that even then the great weight of authority was decidedly that the words " dying without issue," standing without other circumstances of intention, meant a general and indefinite failure of issue, and an executory bequest of personal property made after such contingency was void. There was, in truth, no foundation for the distinction, upon the hypothesis that the rule itself had been made to carry out the will of testators; for it was plain that when the testator, as was frequently the case, used the same words and applied them both to his real and personal estate, it was absurd to suppose he intended them in different senses in the same will. So long, then, as the courts had held that the words " dying without issue" imported an indefinite failure of issue, which it was necessary to hold in order to convert the first devise in fee into an estate tail, the only effect which an application of these words to personal property could reasonably have would be to leave the first estate an absolute fee; and then the rule which governed executory devises, even when a fee was limited in a fee that the estate over must vest within a life or lives in being and twenty-one years and a few months thereafter, would destroy the limitation over as completely and effectually as though the first estate given was an estate tail.

In the southern states of this Union, where these limitations occur so frequently in bequests of slaves, this distinction between real estate and chattels has not been followed or adopted; but the words " dying without issue," unless controlled by other words, have been uniformly construed an indefinite failure of issue. (Hunter v. Haynes, 1 Wash. 71; Eldridge v. Fisher, 1 Hen. & Munf. 559; Daude v. Chaney, 4 Harr. & McHen. 393; Davidson v. Davidson, 1 Hawks, 180; Bryson v. Davidson, 1 Murphy, 143; Mullhens v.

Daniel, 1 Murphy, 4; Every v. Vernon, 1 Nott & McCord, 69; Keating v. Reynolds, 1 Bay, 80; Jones v. Rice, 3 Depaup. 165.)

Another distinction was taken in England in bequests of terms for years, between cases where an express estate tail was first created before the limitation over and those where only an implied estate tail would have been created, had the subject matter been real estate. But this distinction was abandoned, and it has been frequently held that the limitation of a term over, after a dying without issue, even in such cases where the limitation would only have given an estate tail by implication in a real estate, is to be taken in the legal sense of the expression, and therefere the limitation is void. (Fearne Ex. Dev. 233.) Nor does it make any difference whether the devise is to A. *for life* expressly, and if he die without issue, remainder over, or to A. indefinitely, and if he die without issue, remainder over. (Cruise Dig. tit. Devise, ch. 19, § 35, and cases there cited.)

The only question then, in this case, is whether there are any expressions in the will of C. Williams to take the case from the operation of this rule. The only expressions in this will to distinguish this from any other case, where there is a bequest over upon a dying without issue of the first taker, are the words " *then and in that case*" and the words " to be enjoyed by her." The direction to his executors to give the property to his daughter Mahala if his daughter Charity died without issue, can not be understood as having any influence upon the question of intent. There can be no doubt that it was the testator's intent that his daughter Mahala should have the property, in the event indicated, whether his executors were alive or not when that event occurred. Nor is there any thing in the words which declare that the property *was to be enjoyed by his daughter* Mahala, to show that the gift was intended as a personal bequest, inasmuch as the testator adds, that it is to be enjoyed by her and her heirs. This shows, beyond all doubt, that, whether Mahala was alive or not when the testator intended the estate to

vest, was a matter which had no influence on his intended disposition; but he designed the property to vest absolutely in her and her heirs.

In relation to the words "then and in that event," the case of Beauclerc v. Dormer, 2 Atk. 311, is decisive as an English authority; nor can the case of Wilkins v. South, 7 Term. R. 555, be considered as conflicting with Lord Hardwick's construction of the word "then." In this last case, a leasehold was bequeathed to P. and the heirs of his body lawfully begotten and their heirs and assigns forever; but in default of such issue, "then after his decease" to go over. Lord Kenyon considered the words "*then* after his decease" as clearly pointing to the death of P. as the time when the estate would vest.

The case of Bryson and others v. Davidson, 1 Murphy, 143, is like the present in more than one respect, but in regard to the use of these words "*then and in that case*" it is identically the same. There a testator bequeathed to his daughter a negro woman and child, and land and household furniture, and declared that "if she died without having heirs, *then and in that case*" the property to be divided between the testator's nephews, &c. The limitation over was held void, although in the argument great stress was laid on the words "then and in that case;" and the authority of Weekly v. Rugg, 7 Term R. 322, was invoked. The case of Matthews' Adm'r v. Daniel, 1 Murphy, 42, is a case still stronger as showing the adherence of the supreme court of North Carolina to the rule under circumstances where the nature of the property would necessarily require the limitation to vest within a life in being. This was a bequest of a " negro fellow named Bob and a bay horse " to the testator's daughter, and " if she should depart this life without heir lawfully begotten of her body, the said negro and horse should belong to another." The court said the limitation was too remote and that the absolute property vested in the first legatee. The case of Timberlake v. Graves, 6 Munf. 174, is probably as strong a case as can be found to show the

very slight circumstances which have afforded the courts an opportunity of taking cases out of the rule of law. In that case the testatrix gave to her nephew a number of negroes "to him and his heirs forever; but in case it should please God for him to die without heirs, then and in that case it is my wish what I have given him to be equally divided between my two nieces M. A. and P. A." The court sustained this limitation over, and, although the language of that will differs very slightly from the one we are considering, yet the difference happens in a matter which Judge Roane relied upon as the very basis of his opinion in favor of the limitation. The ground upon which the opinion was founded is, that the devise over to the nieces is to *them merely*, and not to them and their heirs. It was intended as a personal benefit to them, and the words "then and in that case" and "equally to be divided" are merely referred to as auxiliary circumstances justifying this construction. It is unnecessary to decide whether, in this state and under our statute of wills, this limitation over to the two nieces could be regarded as a personal bequest, which could only be available to them in the event they survived the first taker. It is sufficient to say that the limitation in the will we are considering to the daughter "Mahala and her heirs" will not admit of any such construction.

It may be proper to observe here, that we regard the question in this case as one of authority merely. When the cases speak of words and circumstances to show the plain intent of the testator to be a definite and not an indefinite failure of issue, we understand them to refer to that intent as manifested *solely* by the additional words and circumstances. If the question was one of intent, arising generally from the face of the will, we could have no hesitation in saying at once that the testator Colden Williams, when he spoke of his daughter Charity dying without issue, alluded to *her* death without issue, and not to the death of her great grandchild or any remote descendant without issue. No additional words could add any force to this conclusion. But that is

not the question. The question is, conceding that the words "dying without issue" means an indefinite failure of issue, are there *other words which, of themselves and in despite of this general manifestation of intention* to keep the property indefinitely in the descendants of the first taker, point incontestably and unequivocally to the death of the first taker as the period contemplated by the testator when the limitation over should take effect. What those words must be, or, at all events, what must be their unequivocal import, is almost as well settled by the precedents as the rule itself. There is, it is true, conflict as to the precise words which will answer, and some courts have gone further than others, and seized upon slighter pretexts and more, apparently, trivial circumstances to carry out what every one now seems ready to admit to be the real intention in all such cases. It is not necessary for us to review the cases, it is sufficient to say that we have found no case which could warrant the conclusion that the particular phraseology of the will now before us would overrule the general import of the words "dying without issue." No case has been cited, and we presume none could be found. Without, therefore, going into any examination of the numerous cases on this subject, it is sufficient to say that the particular phrases which the courts have in other cases seized upon to give effect to the limitation over, are not to be found in this will, and that the principles established by those cases will not apply to the present.

Our statute concerning wills provides that "the judges of the respective courts and all others concerned in the execution of any last will and testament, shall have due regard to the direction of the will and the true intent and meaning of the testator in all matters and things that shall be brought before them concerning the same." It may be thought that this injunction would be a sufficient authority to the courts to disregard this ancient rule for the construction of wills which clearly frustrates the "true intent and meaning" of the testator. But this provision has been on our statute books since 1814, (Geyer's Dig. p. 430,) and in 1825, not-

withstanding the general declaration in the act, the legislature found it necessary to change the rules for the construction of wills in several particulars. The rule in Shelly's case was abolished; (R. C. 1825, p. ——, tit. Wills, § 18;) the omission of the words "heirs and assign," or the words "heirs and assigns forever," was not allowed to thwart the purposes of the testator; (R. C. 1825, p. ——, § 19;) and lapsed legacies were provided for (sec. 21). Subsequently, in 1845, the rule concerning the words "dying without issue" was established; so that the legislative construction of this general provision in the law concerning wills, requiring the courts to have regard to the true intent and meaning of the will, acquiesced in, if not positively sanctioned, by similar *judicial* construction, has been to regard the true intent and meaning of the testator as an intent to be ascertained in accordance with the fixed rules of construction adopted and recognized from the earliest times down to the present, however much these rules may have been regarded as calculated to mislead in an honest search after the testator's meaning. Nobody could doubt that a testator who devised Blackacre to A. without any further mention of the subject, meant to give A. an absolute estate in Blackacre, but it was very well settled law until otherwise declared by statute that A. would, under such a devise, take only an estate for life. It was not in the power of the courts to say that it was the intent of the testator to give A. a fee simple, for the rule of law for the construction of this will was different; and there could be no stability or certainty in titles if the rules for the construction of particular phrases in deeds or wills could be changed according to the mere caprices of the courts. When they are once fixed, every one can buy or sell with confidence; but if different courts can change them according to their varying notions of justice, titles become unsettled.

This case, we may add in conclusion, is one of the first impression in this state. The cases of Wilson v. Cockrell, 8 Mo. 1; Vaughn v. Guy, 17 Mo. 479; Hulbert v. Hulbert, 21 Mo. 277, are cases of deeds; and there is nothing de-

cided or said in them which conflicts with our conclusion' in this case.

Judge Ewing concurring, the judgment of the circuit court is affirmed.