WILLIAM H. PALMER ET AL., Appellants, v. KATE FRENCH ET AL.—
32 S. W. (2d) 591.

Division One, November 18, 1930.

*Randolph & Randolph* for appellants.

*P. C. Breit* and *Mayer, Conkling & Sprague* for respondents.

FERGUSON, C.—The petition in this cause is in two counts. The first count seeks to quiet and determine title to certain real estate situate in Andrew County, Missouri; and the second count asks for partition of said real estate. By the first count of their petition

plaintiffs state that they are "the owners as tenants in common of an undivided one-fourth interest in the fee simple title" to the real estate described; that they acquired their "interest in the title to said real estate, by, through and under the will of Hugh Lewis, deceased" (We hereinafter refer to the testator as Hugh Lewis, Sr.); that said will was duly admitted to probate on the 16th day of April, 1896, and the will is then set out in full in the petition. Omitting the land descriptions, except as to the land described in the sixth item of the will, title to which is in controversy in this cause, the will is as follows:

"I, Hugh Lewis, of the County of Andrew, and the State of Missouri, being in good health and of sound and disposing mind do make and publish this my last will and testament.

"Item First: It is my will and I hereby direct my executor to pay all my just debts and my funeral expense out of my personal estate.

"Item Second: I devise to my daughter Elizabeth J. Palmer, for the term of her life, and at her death to the heirs of her body, absolutely in fee simple, the following described real estate, situate in the County of Buchanan and State of Missouri, to-wit: . . . I further devise to my said daughter, Elizabeth J. Palmer, the sum of five hundred dollars ($500.00) cash, and I direct that my executor pay this sum to her within one year after my death.

"Item Third: I devise to my daughter, Kate, wife of Dr. John A. French, for the term of her life, and at her death to the heirs of her body, absolutely in fee simple the following described real estate, situate in the County of Andrew and State of Missouri, to-wit: . . .

"Item Fourth: I devise to my daughter, Addie Lewis, for the term of her life, and at her death, to the heirs of her body, absolutely in fee simple, the following described real estate, situate in the County of Andrew and State of Missouri, to-wit: . . .

"Item Fifth: I give and devise to my son, Malin Lewis, absolutely in fee simple, the following described real estate situate in the County of Andrew and State of Missouri, to-wit: . . .

"Item Sixth: I give and devise to my son, Hugh Lewis, absolutely in fee simple, the following described real estate situate in the County of Andrew and State of Missouri, to-wit: The Southwest Quarter of Section twenty-two (22) in Township fifty-eight (58) of Range Thirty-five (35).

"Item Seventh: I give and devise to my beloved wife, Adaline Lewis, all the remainder of my estate, real and personal and mixed.

"Item Eighth: If any of my children named in this my last will and testament, shall die without issue living at the time of his or her death, capable of inheriting, then, and in that case, it is my

will, that my dearly beloved wife if living, and such of my said children as may then be living shall take in equal parts all the property by the terms of this will given and devised to such deceased child. If any of my said children shall die and leave children surviving him or her, it is my will that such surviving children shall take in equal parts the property which their deceased father or mother would have taken, if he or she were then living.

"Item Ninth: In case my daughter, Kate, the wife of Dr. John A. French, should die without issue and her said husband should survive her, I devise and bequeath to him the promissory note made, signed and delivered by him to Mary A. Ryan in the sum of nine hundred and thirty-one and 50/100 ($931.50/100) dated at St. Joseph, Missouri, September 28, 1885, which was endorsed by Mary A. Ryan and her husband to the Saxton National Bank, and by said Bank to me on the 20th day of April, 1886, without recourse for a valuable consideration; and in such event I direct my executor to deliver him said note and to enter satisfaction on the margin of the mortgage record for this one note.

"Item Tenth: I hereby appoint my son, Malin Lewis, executor of this my last will and testament.

"Item Eleventh: I hereby revoke all former wills and testaments by me made.

"Witness my hand and seal this 15th day of January, 1887.

"(Seal)  HUGH LEWIS."

The petition then alleges that the testator Hugh Lewis, at his death left surviving him his five children, Elizabeth J. Palmer, Kate French, Addie Lewis, Malin Lewis and Hugh Lewis, Jr., named in the second, third, fourth, fifth and sixth items of the will; that thereafter both Elizabeth Palmer and Malin Lewis died leaving issue them surviving, and that Hugh Lewis, Jr., named in the sixth item of the will died in the year 1925, and "left no child or children of a deceased child surviving him, so that the said Hugh Lewis, Jr., died without issue surviving him;" that William H. Palmer, deceased, Kate Hammond, deceased, and the plantiff Ida Mae Whiting were all and the only children of the said Elizabeth J. Palmer, deceased; that plaintiff John R. Palmer is the sole and only heir at law of the said William H. Palmer, deceased, and that plaintiffs Mrs. L. Z. Green, Mrs. Marvin Mitchell, Ollie Adeline Williams, Eva Belle Worick, William Hurst and Katherine Hurst are all and the only children and lawful issue of the said Kate Hammond, deceased, and that plaintiffs are all and the only surviving issue of the said Elizabeth Palmer, daughter of the testator, Hugh Lewis, Sr.; that the defendants, Kate French and Addie Lewis are daughters of the testator, Hugh Lewis, and that defendants Evie Lewis and May L.

Crowley are the only children and issue of Malin Lewis, deceased, a son of the testator, Hugh Lewis, Sr. As to defendants James T. Norman and Maggie Norman, the petition alleges they are "now in possession of all of the above described real estate," i. e. the land described in Item Six of the will and devised to Hugh Lewis, Jr., and that they claim some estate, title and interest therein adverse to plaintiffs, but that plaintiffs are the owners of an undivided one-fourth interest in the fee of said real estate and are entitled to the possession thereof. The petition further alleges:

"That under and by virtue of said will of said Hugh Lewis, deceased, the real estate in this petition described, together with other real estate, was willed to Hugh Lewis, Jr., and that under and by virtue of the said will of said Hugh Lewis, deceased, the said Hugh Lewis, Jr., acquired a defeasible fee in said lands, subject to being defeated in the event that said Hugh Lewis, Jr., should die without issue surviving him, capable of inheriting and that said Hugh Lewis, Jr., did die on the . . . day of 1925, without leaving any issue surviving him capable of inheriting; and because of that event, and by virtue of the terms of said will of said Hugh Lewis, Sr., the title to said real estate has passed to and is now vested in the plaintiffs, as herein set forth."

The second count of the petition contains allegations substantially the same as those of the first count, but prays for a partition of the real estate described in the sixth item of the will. The cause coming on for hearing, the plaintiffs dismissed as to all the defendants, except James T. Norman, and Maggie Norman, the respondents herein, who demurred to plaintiff's petition upon the ground that said petition "did not state facts sufficient to constitute a cause of action." The court sustained the demurrer, whereupon plaintiffs declined and refused to plead further and judgment was entered dismissing the action, and from that judgment plaintiffs appeal to this court.

As appears from the allegations of their petition, plaintiffs' claim of title to a one-fourth interest in the land devised to Hugh Lewis, Jr., in the sixth item of the will, is made under and by virtue of the provisions of said will. If Hugh Lewis, Jr., having survived his father, the testator, upon the death of his father, immediately took and became vested with an absolute and indefeasible estate in fee simple in said land, then the plaintiffs have no title whatsoever thereto and the demurrer was properly sustained. A construction of the will, therefore, determines plaintiffs' claim of title to the land in controversy and the propriety of the trial court's action in sustaining the demurrer.

Appellants' contention is that the language of Item Eight of the will, when read with the whole will, evidences the intention of the

testator by Item Six to give his son Hugh Lewis, Jr., only a defeasible estate in the land in controversy which terminated at the death of the said Hugh Lewis, Jr., without issue surviving him and that the absolute fee in the land described in Item Six thereupon shifted, passed to and vested in his surviving brothers and sisters and the issue of his deceased brother and sister, and that plaintiffs, being all the surviving issue of Elizabeth J. Palmer, deceased, a sister of said Hugh Lewis, deceased, therefore have an undivided one-fourth interest in fee therein. This contention is based upon plaintiffs' construction of the words "shall die without issue living at the time of his or her death" to mean the death of testator's children named in the will whenever it might occur, either before or after testator's death, and that testator thereby fixed a contingency that would defeat the fee given his sons by Items Five and Six and set the executory devise, which plaintiffs claim exists in Item Eight, in operation.

The sixth item of the will is a clear, express and unqualified devise of a fee simple estate in the land in controversy to Hugh Lewis, Jr., and there is no question that, under this provision of the will, standing alone, Hugh Lewis, Jr., would, immediately upon the death of his father, the testator, take a fee simple title to the land. Courts refuse to cut down, limit or qualify, by construction, an estate already granted in fee or absolutely, unless the supposed terms of limitation alleged to exist in some subsequent portion of a will are as clear, unmistakable and certain as those which devised the fee, and the meaning and intention of the testator to so limit the estate granted is thereby indicated with reasonable certainty. [Yocum v. Siler, 160 Mo. 281; Thornbrough v. Craven, 284 Mo. 552; Chew v. Keller, 100 Mo. 362, l. c. 369; Bernero v. Trust Co., 287 Mo. 602, l. c. 622.] Some of the cases say that such subsequent and alleged qualifying language must be so clear, positive and unambiguous as to not be susceptible of any other meaning. [Spira v. Frenkel (Ala.), 97 So. 104; Scanlin v. Peterson (Conn.), 135 Atl. 394.] It is obvious that the testator well knew the difference between a life estate and a fee, for by the second, third and fourth items of the will he gives to each of his three daughters a life estate in separate tracts of land with remainder in each instance "to the heirs of her body" and by the fifth and sixth items of the will he gives to each of his two sons a tract of land "absolutely in fee simple." In making these devises he used exact, apt and appropriate language to create both the life estates and the estates in fee simple, leaving nothing to implication. It is now said that the estate in fee simple absolute, created by the said sixth item of the will, the fullest and most perfect estate known to the law, was created with the deliberate intention of cutting it down by a subsequent provision of the will, the first part of item

eight, to an estate of doubtful quality and one less valuable and satisfactory than a mere life estate, that is, an estate subject to a gift over upon the devisee's death at any time without issue. Since a devise of an estate defeasible upon the happening of a contingency may be so easily expressed and it appearing that the testator well knew the difference in the quality and kind of estates he desired to devise to his children, we are of the opinion that had he intended to limit or qualify the fee simple estates devised in items five and six, he would have done so in express and unequivocal language. It is not to be assumed that a rational person will deliberately and intentionally devise property absolutely and without qualification or limitation as did the testator in this will and then contradict himself by the imposition thereafter of a limitation, and such a conclusion is not, we think, permissible unless the alleged limiting language is susceptible of no other meaning. [Spira v. Frenkel (Ala.), 97 So. 104.] It is not contended by appellants that the will, by express language, devised to Hugh Lewis, Jr., an estate in fee defeasible upon the contingency of his death without issue. The most that can be claimed is that such estate might be inferred from the language of Item Eight as read with the will as a whole. We think no clear intention to cut down the fee simple absolute estates given is manifest in the will or is to be inferred with any reasonable degree of certainty from the language of Item Eight or any of the other provisions of the will, unless we adopt appellants' construction of the words "shall die without issue living at the time of his or her death" as referring to the death of the primary devisee at any time, either before or after testator's death. In determining the meaning and effect of this language in the setting in which we find it, we resort to recognized rules of construction. Testamentary provisions like this have been the subject of much judicial discussion and adjudication, and we find the general rule which has evolved, supported by a great preponderance of judicial authority, to be that when real estate is devised to one with a provision for a gift over in case of the death of the legatee, or devisee, without issue, or without having surviving issue, the event referred to is death without issue during the lifetime of the testator. The intention of the testator is presumed to be to prevent a lapse. [Owens v. Men and Millions Movement, 296 Mo. 110; Ewart v. Dalby, 319 Mo. 108; Henderson v. Calhoun, 183 S. W. (Mo.) 584; Stokes v. Weston (N. Y.), 37 N. E. 515; Seewald's Estate, 127 Atl. 63, 281 Pa. St. 483; Boren v. Reeves, 123 N. E. 359, 73 Ind. App. 604; Fowler v. Duhme, 42 N. E. 623, 143 Ind. 248; Tarbell v. Smith, 101 N. W. 118, 125 Iowa, 388; Scanlin v. Peterson, 135 Atl. (Conn.) 394; Lumpkin v. Lumpkin, 70 Atl. 238, 108 Md. 470; Scruggs v. Mayberry, 188 S. W. 207, 135 Tenn. 586; Ervin v. Waterbury, 174 N. Y. Supp. 677; Vanderzee v. Slingerland, 103

N. Y. 1. c. 53, 8 N. E. 247; Kohtz v. Eldred, 69 N. E. 900, 208 Ill. 60; Spira v. Frenkel, 97 So. 104, 210 Ala. 27; Schouler on Wills (1926 Supp. to 6 Ed.), sec. 1050; 28 R. C. L., sec. 231, p. 259.] However, as is said in Owens v. Men and Millions Movement, 296 Mo. 110, l. c. 119:

"The rule, that where property is devised to one with a provision for a gift over in case of the death of the devisee without issue, the event referred to is death without issue during the lifetime of the testator, like all other subordinate aids to construction, must give way to the primary rule that the intent of the testator is to be gathered from the four corners of the instrument, giving effect if possible to all its language. Accordingly if there are expressions in the will which indicate that the testator referred to death subsequent to his own demise, they must be given effect."

Appellants say that certain language contained in the first part of Item Eight, which we italicize:

"If any of my children named in this my last will and testament, shall die without issue living *at the time of his or her death*," is to be differentiated from the phraseology commonly found in the class of cases where the general rule has been applied, to-wit: "die without issue;" and that the testator by the language "die without issue living at the time of his or her death" must have meant the death of a child whenever same might occur, either before or after testator's death, "since the very language specifies the time of dying without issue to be at the time of his or her death." In the numerous cases bearing on this subject and supporting the general rule, we have found a variety of language used, the most common phrase employed being "die without issue." But, other language, which seems to have been considered as being of the same import, frequently occurs, as, "without lawful issue;" "without lawful issue living *at the time of death;*" "without issue alive" and "without issue living at the time of his death."

In Seewald's Estate, supra, this same contention was advanced. In that case the gift was to testator's two sons,—"and should either of them die *without issue living at the time of* his death," a proviso over. The court said: "The general rule stated must apply unless there is somewhere in the will language indicating a contrary intent on the part of testator," and continuing:

"The only provisions which affect the devise are: . . . second, that the words 'die without issue' are followed by the clause 'living at the time of his death.' These clauses, however, are not sufficient to show testator contemplated the residuary gift taking effect, if at all, at the death of the son rather than at his own death. . . .

The requirement that the issue should be living at the time of the son's death is likewise without effect as a limitation on the estate given the sons, *nor does it aid in determining the period at which death should occur to make the remainder effective.* It merely adds a further condition to the devise by requiring, not only that the son dying should have had issue, but also that such issue must actually be living at the time of the son's death.''

We think the addition of the words ''living at the time of his or her death,'' after the words ''die without issue,'' to be insufficient to show that testator contemplated that the devise over was to take effect on the death of a child *after* rather than *before* his own death. The phrase ''living at the time of his or her death'' does not in our opinion add anything to the language most commonly employed, ''die without issue,'' and means only that though the primary devisee may have issue born alive, yet unless such issue survived the primary devisee and was living at the time of his or her death, the devise over should not become operative. We think the language of ''die without issue living at the time of his or her death'' as used in the will must be considered as synonymous with ''die without issue'' as same is commonly used and interpreted in this class of cases.

In the ninth item of the will we find the testator directed that ''in case my daughter Kate, the wife of Dr. John A. French, should die without issue and her said husband should survive her,'' the executor was to deliver to French a certain promissory note. It cannot be urged that the reference here is to death of Kate French at any time it might occur, either before or after the death of testator, for clearly the reference is to death occurring before testator's death and the taking effect of the will, and we think the testator could have had no different contingency in mind when he used the language ''die without issue living at the time of his or her death'' in the eighth item of the will. Upon examination of the whole will we do not find any language of the testator clearly indicating or from which, we think, it may be properly and reasonably inferred that by the eighth item of the will he referred to the death of his children after his own decease. The general rule above cited therefore applies to this case. The will on its face manifests a clear, orderly and natural scheme of disposition. By the first seven items of the will the testator disposed of all his property. He devised to each of his three daughters a life estate in certain land, with remainder in each instance ''to the heirs of her body;'' he devised to each of his two sons a fee simple estate in certain land; he devised and bequeathed to his wife all the residue of his estate, which included all his personal property except $500, which had been bequeathed to one of his daughters in addition to a life estate in certain land. Thus, he gave his entire estate

to parties *in esse* and capable of taking, and who constituted his own family. We assume he made such division thereof as he considered just and equitable. In the event any of his children should predecease him without issue living, he incorporated the first part of Item Eight in his will. Without such provision, had a child or children predeceased testator without issue living, the devise to such child would have lapsed and have gone to the widow as residue, and thereby have given to the widow a larger share in the estate than testator may have desired her to take. By operation of the first part of Item Eight the property devised to a child who predeceased the testator without issue living is prorated among all the surviving beneficiaries including the wife, thereby adding an equal amount to that part going to each at the time of testator's death, and thus maintaining the equitable division he had made.

Our construction of Item Eight and the will as a whole follows the well settled doctrine that estates given by will should always be regarded as vesting immediately unless the testator has, by very clear words, manifested an intention that the estates given should remain in abeyance, and is consistent with the rule that a will speaks as of the date or time of the testator's death, no contrary intention clearly appearing from the language and terms of the whole will.

We think that testator intended by the first part of Item Eight to provide alternative beneficiaries to take the property devised to any of his children who might predecease him without leaving issue to represent them at the time of the taking effect of the will, and that he did not intend thereby to cut down, limit or qualify any of the estates theretofore specifically and expressly created and devised; that the words "die without issue living at the time of his or her death" should here be held to refer to death during the lifetime of testator and, therefore, the son, Hugh Lewis, Jr., having survived his father, the testator, took an indefeasible estate in fee simple in the land described in the sixth item of the will.

The judgment of the court *nisi* is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion of FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.