# MARCH, 1938.

In the Matter of the Estate of Minerva Putman, Deceased, Blonville Wallis and Lelian Bryan, Petitioners, Respondent, v. Waldo G. Gideon, Executor of the Estate of Mary J. Knighten, Deceased, Claimant, Horatius B. Hastings, Doing Business Under the Name of Scriptural Tract Repository, Claimant, Appellants.—119 S. W. (2d) —.

Springfield Court of Appeals.   September 12, 1938.

Rehearing denied August 10, 1938.

*F. W. Barrett* and *W. G. Gideon* for appellant Waldo G. Gideon, Executor of the Estate of Mary J. Knighten, Deceased.

*Coltrane & Coltrane* for appellant Horatius B. Hastings, doing business under the name of Scriptural Tract Repository.

*E. D. Merritt* for respondents Blonville Wallis and Lelian Bryan.

SMITH, J.—This is an appeal from the judgment of the Circuit Court of distribution in the estate of Minerva Putman, deceased. The question is who is entitled to the proceeds of the sale of the property mentioned in the first clause of the last will of Minerva Putman, who died in 1905, which is as follows:

"I will bequeath and devise unto my beloved and only child and daughter Mary J. Knighten, for and during her natural life the following described lands situate in Greene County, Missouri, to-wit: The West half of the North east quarter of Section (20) twenty in Township (30) Thirty of Range Twenty-one (21) and after her death it is my will and I direct and impower and authorize her executor to sell and convey the above described real estate at public or private sale for the highest price obtainable to such person or persons as he may deem best and to convey the same by sufficient deed of conveyance and to receive the proceeds of such sale and pay the same to the Scriptural Tract Depository of Boston, Massachusetts, if in existence, and if not then in existence, I will and direct that the proceeds of such sale be then, in that event, paid to the American Cumberland Presbyterian Bible Association."

The case originated in the Probate Court of Greene County, which court held that Appellant, Waldo G. Gideon, Executor of the estate of Mary J. Knighten, was entitled to the money in question as the representative of the estate of said Mary J. Knighten. Appellant, Horatius B. Hastings, doing business under the name of Scriptural Tract Repository, and Respondents, Blonville Wallis and Lelian Bryan, appealed to the Circuit Court of Greene County, which court held that respondents were entitled to the money in controversy, from which judgment, Appellants, Hastings and Gideon, Executor, have appealed to this court.

The testimony as presented to the Circuit Court is before us on this appeal. After hearing by the Circuit Court, the case was taken under advisement, and the following judgment was rendered:

"And now, on this 15th day of July, 1937, and on the 47th judicial day of the May Term, 1937, the court, being fully advised of the facts and the law applicable to the facts, makes this finding, order and judgment in said cause. The Court's findings are: That Minerva Putman, by her last will and testament, dated October 7, 1901, and duly admitted to probate in the Greene County Probate Court on December 14, 1905, devised to her only child and daughter, Mary J. Knighten, for and during the natural life of her, the said Mary J. Knighten, the following described 80 acres of land situate in Greene County, Missouri, to-wit:

"The West half of the Northeast Quarter of Section Twenty (20) in Township Thirty (30), of Range Twenty-one (21), and at the death of said Mary J. Knighten, said will directed that said 80 acre

tract be sold by the executor of the Mary J. Knighten estate, for the highest obtainable cash price, execute a deed of conveyance to the purchaser, to receive the proceeds of such sale and pay the same to the Scriptural Tract Depository, of Boston, Massachusetts, if in existence, and if not then in existence, to pay said purchase price to the American Cumberland Presbyterian Bible Association; that while the remainder was contingent on there being an executor authorized by said will to make said sale, that contingency was fulfilled and the legal title passed on the death of Mary J. Knighten on October 21, 1934, to Waldo G. Gideon, who was named by Mary J. Knighten as the Executor of her estate, in trust, however, with directions to sell, and on his making a sale the title passed to his grantee.

"The Court further finds; That the Will of Minerva Putman, deceased, in directing the sale of said 80 acre tract of land by the Executor of the estate of Mary J. Knighten, did not vest in that estate any beneficial interest in said 80 acre tract of land, nor in the proceeds of the sale thereof, but merely created a trust for the purpose of selling said tract of land and disposing of the proceeds thereof, and selected as trustee of said trust the person who should be named by Mary J. Knighten as her Executor; that there was never any interest in said 80 acre tract of land, as such, either vested or contingent, in any of the parties now claiming the fund in the hands of said Trustee, and there is no contention by anyone in this proceeding that said Waldo G. Gideon's deed of conveyance to his grantees did not pass the title to his grantees free and clear of any claims that might be made by the heirs of Minerva Putman, deceased.

"The Court further finds: That this controversy does not arise over the succession to the 80 acre tract of land, but arises over the disposition of the proceeds of the sale of said tract or fund which had no existence until December 30, 1935; when said Executor sold said 80 acre tract for cash and received the sum of Fifty-two Hundred ($5200) Dollars, the proceeds of the sale thereof.

"Under the Will of Minerva Putman the trustee was directed to pay said fund to the Scriptural Tract Depository of Boston, Massachusetts, if in existence, and if not then in existence, to the American Cumberland Presbyterian Bible Association; and if neither said named legatees was in existence, then, as to said fund, said Minerva Putman died intestate; that the bequest of said fund could not be consummated until said fund came into existence and there could be no ownership of or right to said fund until said fund came into existence, and the bequest could not fail until that time, to-wit: On December 30, 1935.

"The Court further finds, declares and adjudges that on December 30, 1935, and thereafter, there was no person, partnership, corporation,

association or other legal entity capable of inheriting, or taking a bequest, known as the Scriptural Tract Depository or the Scriptural Repository, nor was there such person, partnership, corporation, association, or other legal entity known as the American Cumberland Presbyterian Bible Association; that the bequest of the proceeds of the sale of said 80 acre tract of land does not create a charitable trust, either in form or substance, but is an attempt to make an outright gift; that, therefore, the bequest of said fund failed for want of a devisee; that as the estate of Mary J. Knighten, deceased, after the termination of her life estate in said 80 acre tract of land at the time of her death on October 21, 1934, has no interest therein or in the proceeds of the sale thereof, the American Bible Society, as residuary legatee under the last will and Testament of Mary J. Knighten, deceased, acquired no right, title, interest or estate in said 80 acre tract of land, or in the fund now held by Waldo G. Gideon, Executor, and representing the proceeds from the sale of said tract of land; and said fund descends as intestate property to the heirs-at-law of Minerva Putman, deceased.

"WHEREFORE, the findings of the Court considered, the Court now finds, adjudges, orders and decrees that on December 30, 1935, the only heirs-at-law of Minerva Putman, deceased, were claimants Blonville Wallis and Lelian Bryan, and that they are now the owners of said fund, now amounting to Forty-seven hundred nineteen and 50-100 ($4719.50) Dollars, with interest from this date at the rate of Six (6) per centum per annum, and said Waldo G. Gideon, Administrator de bonis non with the will annexed of Minerva Putman, deceased, distribute said fund to said Blonville Wallis and Lelian Bryan in equal shares; that said Wallis and Bryan recover their costs in this behalf and that execution may issue."

Thereafter upon the trial court's own motion the judgment was modified by striking out the judgment for interest.

Motions for new trial were filed by Waldo G. Gideon, Executor of the estate of Mary J. Knighten, deceased, and by Horatius B. Hastings, doing business under the name of Scriptural Tract Repository. These motions were both overruled, and these parties have appealed to this court.

The case is presented to us by the three claimants upon the following theories: First Claimants, Blonville Wallis and Lelian Bryan, designated in this appeal as Respondents, are claiming this property as next of kin of Minerva Putman since the termination of the life estate of Mary J. Knighten, (being grand nephew and grand niece of Minerva Putman), and since the substitute legatees named in the will are nonexistent and or incapable of taking the fund; Second, Waldo G. Gideon, Executor of the estate of Mary J. Knighten, is claiming it as part of her estate, on the insistence that since failure

of the residue of the property to go as provided by the Will that part of the property goes to the heirs of the testatrix, Minerva Putman, as of the time of her death. Third, Claimant Horatius B. Hastings, doing business under the name Scriptural Tract Repository, claims as legatee under the Will.

Let us first consider the claim of Horatius B. Hastings, and the Court's ruling under his claim. His testimony was all in the form of a deposition given upon interrogatories submitted to him. He testified in part as follows: ''My name is Horatius B. Hastings, aged 74 years, resident Saugus, Massachusetts. Occupation, book seller: editor and publisher. . . In 1865 my father, H. L. Hastings, established a religious publishing business to which he gave the name The Scriptural Tract Repository, hereinafter mentioned as the ''Repository,'' and of which he was sole owner. It printed tracts for free distribution. In addition many religious books were printed which bore sometimes his own name as publisher, sometimes the imprint Scriptural Tract Repository and sometimes both. The sole ownership of the Repository now is in the deponent, Horatius B. Hastings through inheritance from his father H. L. Hastings who died in 1899 and through his brother John K. Hastings who died in 1906 and through his mother Harriet B. Hastings who died in 1913. The business carried on by me is still of the same nature.

''The business was first established as the Scriptural Tract Repository, at 19 Lindell St. (now Exchange Place), Boston, Mass., where it remained until the place of business was destroyed by fire in 1872. Thence for short periods of time it was located at No. 538 (later changed to No. 712) Washington St., 342 Washington St., and 47 Cornhill, where it· remained for a quarter of a century, removing thence in 1904 to 211 Tremont St.; thence after eleven years to 36 Bromfield St., and thence to its present location, 168 Dartmouth St., Boston.

''It has always been located in Boston, Mass., and has been operating continuously from the date of its founding up to the present time. I am now conducting it. The purpose of the founder was to publish unsectarian religious literature, and if possible, to make the work self supporting. Accordingly prices were fixed on publications to cover the cost and yield a modest profit. But many books, tracts and papers were given freely and if the receipts nearly balanced the outgoes, the year was considered successful. There were seldom any profits recognizable as such. The work was unsectarian and had no financial backing, but the character of the publications and the conduct of the work attracted many friends who made cash contributions to its support. . . .

''There is not to my knowledge in Boston, Mass., any corporation, society or business having as its name 'Scriptural Tract Depository' as distinguished from 'The Scriptural Tract Repository.' A search

has been made in Boston City directories and the name Scriptural Tract Repository appears at different times but no Scriptural Tract Depository has been found. I have made inquiries at the Boston City Hall where such information is usually obtainable to see if there is any record of any society or institution conducting a business or work under the name Scriptural Tract Depository but found no record of one.''

On cross interrogatories he said: ''I claim ownership under the will as successor in interest to the Scriptural Tract Repository of Boston, Mass., which was intended by the testatrix to be mentioned as a legatee in her last will and testament. I am the owner of the Scriptural Tract Repository through inheritance from my father Horace L. Hastings, who was its founder and sole owner prior to his death in 1899, through my brother John K. Hastings, who died in 1906, and through my mother, Harriet B. Hastings, who died in 1913.

''The Scriptural Tract Repository was founded and conducted for the distribution of religious literature at the cost of production and not on a money making basis and is still so conducted. . . . . . The Repository differs from other publishing houses in that it does not publish paid advertisements and its object has been and now is to do good rather than to make money. The output of the Repository is not published in the interest of the Cumberland Presbyterian Church. It is not a corporation but is and has been a privately and individually owned concern which was given the name Scriptural Tract Repository to indicate the character of its aims. The Scriptural Tract Repository is a trade name. It is not a co-partnership but belongs to me exclusively. It is not a voluntary association—there are no associate members.

''I would not consider money turned over to the Scriptural Tract Repository strictly speaking a trust. I would use it in paying outstanding debts of the Repository and in further carrying on its operations along the lines indicated in the foregoing answers. The Scriptural Tract Repository has no Board of Trustees or directors.

''My former bookkeeper, Miss May R. Darke, 10 Maple Street, Derry, New Hampshire, assisted me in the search for a concern named ''The Scriptural Tract Depository.'' . . . .

''It is preposterous to suppose that I or any other person could truthfully 'testify positively' from personal knowledge and recollection that there had been no printing establishment of that name, transitory, or otherwise, in Boston during the past forty years. I can and do swear that although I had an extensive knowledge of such establishments I never knew of one having that name; and inquiries at sources of such information have failed to disclose the existence at any time of the 'Scriptural Tract Depository'.

''I never met Mrs. Putman and knew her only through corre-

spondence. I do not know whether Minerva Putman corresponded with and contributed money to the 'Scriptural Tract Depository of Boston, Mass.' ''

The foregoing was all the testimony offered to establish the claim of Horatius B. Hastings, and this testimony shows that this claimant does not insist that a charitable trust was created. In fact he said that he did not consider money turned over to the Repository as a trust. He simply claimed the money by inheritance, that is by inheriting his father's business and trade name.

Considering this testimony most favorable to this claimant we are forced to the conclusion that the trial court was right in holding against this claimant. Our courts on appeal has justified such a holding by decisions of many cases of similar character: National Board of Christian Women's Board of Missions v. Fry, 239 S. W. 519, 524; Jones v. Patterson, 195 S. W. 1004; Lilly v. Tobbein, 103 Mo. 477, 15 S. W. 618; Schneider v. Kloepple, 193 S. W. 834; Robinson v. Crutcher, 209 S. W. 104.

Since the trial court held that the provisions of this will with reference to the payment of the cash derived from the sale of the real estate failed, and in which holding we agree, it is our conclusion that this finding of the court left the property just as if the will had been written giving the life estate as it did to the daughter, Mary J. Knighten, and with a further provision that the executor of the estate of Mary J. Knighten convert the real estate into cash, with no disposition as to the cash after the land had been so converted. This is especially true since the Scriptural Tract Repository of Boston and American Cumberland Presbyterian Bible Association cannot take under the will. In other words, this will stands just as if Minerva Putman had made her will conveying her real estate to her daughter for her daughter's life, and after the death of the daughter the land to be sold, and with no provision at all as to who shall take the cash realized from the sale of said real estate. Or to express it another way, Minerva Putman died intestate, under the circumstances herein, as to the cash derived from the sale of her land.

Since we have reached the above conclusion, who then should take the cash under such circumstances? In considering this question let us see what would have been the effect if the life estate in the land had been given to the daughter just as in this instance, and at her death the will had provided for the real estate to go to other legatees, and those legatees had not been in existence or could not take. Then, under such circumstances, who would be entitled to inherit? It could not seriously be contended that the heirs of Minerva Putman would not be entitled to take the real estate, nor do we think there could be much contention that the heirs would not be those as of the

time of her death rather than those who could be called heirs at and after the termination of the life estate.

If that would have been the case had the lands not been sold, would the results in law be any different when the lands were sold and converted into cash and the cash not distributed? We think there is no difference. If the lands in fee would have gone to the heirs of Minerva Putman as of the date of her death, which we think and hold is true, then the cash held in lieu of the land would and should go to the heirs of her as of the date of her death. We think we are sustained in this conclusion by the many holdings of the courts upon such questions. Among these cases are the following: 65 C. J. 376, Section 151; De Lashmutt et al. v. Tettor et al. (Mo. Sup.), 169 S. W. 34; Peugnet v. Berthold (Mo. Sup.), 81 S. W. 874; Evans v. Rankin (Mo. Sup.), 44 S. W. (2d) 644; Collins v. Whitman et al. (Mo. Sup.), 222 S. W. 840; Gardner v. Vanlandingham (Mo. Sup.) 69 S. W. (2d) 947; Palmer v. French (Mo. Sup.), 32 S. W. (2d) 591.

Who was the heir of Minerva Putman at the time of her death? There can be no question but that Mary J. Knighten, her daughter was the heir directly descendant, in fact this is conceded by all the parties to this litigation as shown by the record before us. Since under the trial court's holding that the legatees could not take, in which holding we fully agree, it must of necessity follow that the undisposed of interest of Minerva Putman's real estate was in Mary J. Knighten at the time of Mary J. Knighten's death.

Since all the parties to this litigation seem not to question the right of the executor, Waldo G. Gideon, to convert the real estate into cash, we hold that he, as executor of Mary J. Knighten's Estate, is now entitled to said funds to be, by him, handled and distributed according to law.

It is our conclusion that the trial court erred in its findings of facts and its declarations of law, and that the judgment should be reversed and the cause remanded with directions to enter judgment in favor of Waldo G. Gideon, Executor of Mary J. Knighten's Estate. It is so ordered. *Allen, P. J.,* and *Fulbright, J.,* concur.