MATTIE E. NORMAN, HATTIE H. WARREN, LAURA E. LOGAN, EARL L. JAMES, ELMER JAMES and GRACE JAMES, Respondents, v. ANNIE M. HORTON and CELESTE CLAUSER, Appellants, MARY L. PENFIELD and the unknown consorts, devisees, donees, legatees, alienees, immediate, mesne and remote, voluntary or involuntary grantees of JOHN STEPHEN HERRIMAN, Codefendants.—126 S. W. (2d) 187.

Division Two, March 15, 1939.

*Mahan, Mahan & Fuller* and *Ben Ely* for appellants.

*Chapman & Chapman* for respondents.

BOHLING, C.—This review turns on the title to a certain lot in Hannibal, Marion County, Missouri. The basic issue presented is as of what date are the heirs at law of John Herriman, the common source of title, to be determined for the purpose of vesting title under the following provisions of a deed, dated February 14, 1883, from said Herriman and wife to Celeste B. Curd:

"The object and intention of said parties of the first part is, by this deed, to convey to the said Celest — B. Curd, *only* a life estate or interest in and to the above described Real Estate with Remainder over to the heirs-of-her Body, legally begotten—but should the said Celest — B. Curd die without Bodily Heirs, as aforesaid, surviving her, then the title to the above described Real Estate, at her death, shall .revert to and vest absolutely in the Heirs-at-law of the said John Herriman, one of the said parties of the first part herein.-"

The deed designated "Celeste B. Curd, wife of William B. Curd, during her natural life, and at her death, Remainder to the heirs of her Body, legally begotten, Party of the Second Part." The recited consideration was "love and affection" and "one dollar." The grant, habendum and warranty in effect, with immaterial differences in the wording, were: ". . . unto the said party of the second part, during her natural life with remainder over to the heirs of her body, and unto their heirs and assigns forever."

John Herriman died April 11, 1883, intestate, leaving surviving his widow, Harriet E. Herriman, who died in April, 1888, and four children; to-wit:

John Stephen Herriman, who died intestate July 19, 1923, single and unmarried, leaving no issue.

Edward W. Herriman, who died intestate February 26, 1897, leaving no issue surviving. Prior to his death he executed a warranty deed conveying his right, title and interest in the real estate to Mary L. Herriman, who, subsequent to the death of and while the widow of said Edward, conveyed the same to Celeste B. Curd.

Lydia E. Bird, who died February 15, 1907. Mattie E. Norman, Hattie H. Warren, Laura E. Logan, children of said Lydia, Earl L. James, Elmer James and Grace James (grandchildren of said Lydia and children of her deceased daughter May James) survived as of the date of the death of Celeste B. Curd; and are the plaintiffs herein.

Celeste B. Curd, who died January 11, 1935, testate, leaving no bodily heirs. She devised all her right, title and interest in the real estate involved to Annie M. Horton and Celeste Clauser, the appealing defendants.

Appellants say the future interest given to the "heirs at law" of John Herriman was a reversion and not a remainder; but even if

a remainder it vested in said "heirs at law" upon the death of said Herriman; that Celeste B. Curd inherited from her father, acquired Edward W. Herriman's inheritance, and also inherited from her brother John Stephen Herriman; and that she devised said interests to appellants.

Respondents contend the estate vested upon the death of Celeste B. Curd and they take as the sole surviving heirs of said John Herriman as of the date of the death of Celeste B. Curd. The trial court so found. We reach the same conclusion.

Appellants refer us to Blackstone. "An estate in *reversion* is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. Sir Edward Coke describes a reversion to be the returning of land to the grantor or his heirs after the grant is over. As, if there be a gift in tail, the reversion of the fee is, without any special reservation, vested in the donor by act of law: and so also the reversion, after an estate for life, years, or at will, continues in the lessor. For the fee-simple of all lands must abide somewhere; and if he, who was before possessed of the whole, carves out of it any smaller estate and grants it away, whatever is not so granted remains in him." [2 Bl. Comm. (Lewis, 1900, Ed.), *175. See 4 Kent's Comm. (14 Ed.) 354; 1 Fearne on Remainders, p. 381, note (a); 2 Minor's Institutes (2 Ed.) 365, 23 R. C. L., p. 1100.] The subject in so far as material here appears to be well reviewed in the text and citations in 21 Corpus Juris, pages 1016-1019, sections 179-181. Among the characteristics of the estate are: It is derived from the foedal constitution. It arises by operation of law; never, as a remainder, by deed or writing or act of the parties. Being the residue of an existing estate, it remains vested in the sense of a present fixed right of enjoyment *in futuro*. See authorities supra.

The estate created by the deed in the "heirs at law" of John Herriman was not a technical reversion within the quoted definition. It was created by an act of the parties. A living person does not have heirs; and on the date of the grant the heirs at law of John Herriman were not ascertained. Hence, at the time of and under the grant, there existed no reversion, a vested estate, in said "heirs at law."

Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157, cited by appellants, may be distinguished in that, among other things, a base or qualified fee was conveyed and the grant over was to the grantor and his heirs. The contested issues there were not the same as here, and perhaps some observations there made should have been credited to the litigants. Defendant, Robert Keller, contended that the provisions of the deed from John George Keller to George J. Keller were so repugnant they could not stand together and that the fee simple title, not a base or qualified fee, vested in the grantee. Plaintiffs on appeal presented issues respecting only the rights of the three children of

Louis T. Keller, who had not joined the other heirs of John G. Keller in the deeds from the heirs of John G. Keller to George J. Keller; asserted the court correctly ruled that each of said three children of said Louis were entitled to "an undivided one-twenty first interest," and that said George J. Keller, at the time of his death, held "an undivided six-sevenths interests", and treated .the findings of the court upholding the validity of said deeds from said heirs as conclusive. Defendant asserted said deeds constituted releases, if anything, of possibilities of reverter; but contended, as aforesaid, that the original deed conveyed the fee.

But, appellants say the grant to said "heirs at law" is nugatory; that is, be it a reversion or a remainder, they take by descent the same title they would take under the grant, and the title by descent is the worthier. 1 Tiffany, Real Property (1920 Ed.), p. 470, sec. 130; 23 R. C. L., p. 1100, sec. 3, n. 6, stating: "At common law if a man seised of an estate limits it to one for life, remainder to his own right heirs, they take not as remaindermen, but as reversioners . . .", and citing Akers v. Clark (1900), 184 Ill. 136, 56 N. E. 296, 75 Am. St. Rep. 152. That annotation (75 Am. St. Rep. l. c. 159), after reviewing authorities and reasons, states: "In conclusion, there would seem to us to be no substantial reason for the existence in this country of the doctrine we have been discussing. The original reasons for its existence have long since passed away, in fact never existed here, and the more recent reasons seem entitled to but little more weight." The rule prevents the heirs from taking as remaindermen—as purchasers. [1 Fearne Rem. 51; 2 Minor's Institutes 340; Tiffany, ibid.] However, Eckle v. Ryland (1914), 256 Mo. 424, 447, 165 S. W. 1035, 1041(6), among others, affords specific Missouri authority that heirs may take as purchasers. At common law "even if the ancestor devises his estate to his heir-at-law by will, with other limitations, or in any other shape, than the course of descents would direct, such heir shall take by purchase." [2 Bl. Comm. *241.] We pass this phase of the issue without further development.

The instant case does not involve the grant of a life estate with a simple "reversion in grantor and his heirs" or "remainder to grantor's heirs" or "remainder to the life tenant's issue or, in default of such issue, to grantor's heirs." We may not with propriety mutilate the deed grantors solemnly made and rid it of this grant over if its deletion defeats what grantors state expressly to be their "object and intention . . . by this deed." Courts now pierce the ancient rules of feudal tenure and for the construction of instruments to give effect to the intention of the parties if such intention violates no public policy or positive rule of law. "The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be ex-

pressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it no matter in what part of the instrument it is found." [Utter v. Sidman, 170 Mo. 284, 294, 70 S. W. 702, 705. See, among others, Gibson v. Bogy, 28 Mo. 478, 479; Keller v. Keller, 338 Mo. 731, 737(1), 92 S. W. (2d) 157, 159(1).]

We are of opinion the grant created, possibly best expressed, contingent class remainders in the alternative or with a double aspect [1 Tiffany, Real Prop., p. 510, sec. 142; 1 Fearne, Rem., p. 373; 21 C. J., p. 988, sec. 140; 23 R. C. L., p. 550, sec. 94, p. 551, secs. 96, 97, 98]—to a class, because not to persons designated by name but to a group designated by a general descriptive term; alternative, because primarily to the legally begotten bodily heirs of Celeste B. Curd, surviving her, and secondarily to the "heirs at law" of John Herriman; and contingent as hereinafter indicated—and that said remainders finally determined and vested upon the death of Celeste B. Curd. Such ruling is well within the holdings in Eckle v. Ryland (Div. 1, 1914), infra, and Tevis v. Tevis (Div. 1, 1914), 259 Mo. 19, 38(3), 167 S. W. 1003, 1007(6), Ann. Cas. 1917A, 865, 870(3). Appellants say the Tevis case is repudiated by Gardner v. Vanlandingham (Div. 1, 1934), 334 Mo. 1054, 69 S. W. (2d) 947. The provisions involved in the Gardner case are so different from those of the instant case that we deem it unnecessary to concern ourselves with any alleged conflict between the holdings in the Tevis and Gardner cases.

Briefly of Eckle v. Ryland, 256 Mo. 424, 445, 450, 165 S. W. 1035, 1040, 1042(9). Eusebia Buford conveyed certain property in trust for her son William M. and herself, and provided that on the death of the survivor "the said trust herein provided for shall terminate and the title to said real estate and property shall go to and vest in my two children, Legrand G. Buford and Florence I. Banks, one-third each, or to their heirs should they or either of them be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants and to their survivor, for life, with remainder to my two other children Legrand G. Buford and Florence I. Banks, and their heirs, share and share alike, in fee simple forever." The grantor first died. Legrand G. died prior to William M., his brother, and by will, undertook to dispose of his future interest in the trust property cutting off his son Coleman G. Buford, who survived William M. We see no material difference between the contention there that Legrand G. took a vested remainder on the delivery of the trust deed and the contention here that the remainder vested in the "heirs at law" upon the death of John Harriman. The court discussed the use of the word "or" in one and the word "and" in another reference to "heirs" in the Buford grant, but the litigants presented no issue

involving the change of words and that phase of the Eckle case is immaterial here. The court held that on the death of the survivor of William M. and Eusebia Buford, "then, and not till then, was the estate in remainder to vest. Our conclusion is also that then it was to vest on the happening of a contingency *and in the alternative.* The contingency was that Legrand G. Buford should then be alive. The alternative was that if he be dead it should vest in his heirs. . . ." The court remarked (256 Mo. 1. c. 453, 165 S. W. 1. c. 1043): "The tendency of modern decisions on questions of contingent and vested remainders has been more and more to break away from the technical refinements of the old common-law learning [citing authority] and allow deeds to be effective in line with the intent of their faces as gathered from the everyday, good sense of their language."

We think the expressed "object and intention" of the grantor is clearer in the instant case than in the Eckle case.

█ Among the incidents of the ownership of real property pertinent to a consideration of remainders are: (1) the estate—the quantum of the right, title and interest—therein; and (2) the enjoyment and possession thereof.

Blackstone states: "Vested remainders (or remainders *executed,* whereby a present interest passes to the party, though to be enjoyed *in futuro*) are where the estate is invariably fixed, to remain to a determinate person, after the particular estate is spent. . . .

"Contingent or executory remainders (whereby no present interest passes) are where the estate in remainder is limited to take effect, either to a dubious or uncertain *person,* or upon a dubious or uncertain *event;* so that the particular estate may chance to be determined, and the remainder never take effect. 2 Bl. Comm. *168, *169. For other definitions; Vested remainders: see 2 Minor's Institutes, p. 337; 21 C. J., p. 979, sec. 131; 23 R. C. L., p. 496, sec. 27. Contingent remainders, see Minor, Ibid. 21 C. J., p. 981, secs. 132 et seq., 29 R. C. L., p. 498, sec. 29; Eckle v. Ryland, 256 Mo. 1. c. 451, 165 S. W. 1. c. 1042.

█ The remainder to "the heirs of her [Celeste B. Curd's] body, legally begotten, . . . surviving her" was dubious and uncertain as to person and event. Under the grant, such estate as the "heirs at law" of said Herriman had, they being secondarily entitled as substitutional remaindermen, was preceded by a contingent remainder. It has been stated one cannot have a vested remainder after a contingent remainder in fee simple. Dr. Manley O. Hudson, to whom appellants refer us as a leading authority on real estate law, in 1 Mo. L. B., p. 26, n. 127, citing Loddington v. Kime (1551), 1 Salk. 224, so holding; 1 Fearne, Rem., pp. 225, 229; Gray, Rule Against Perpetuities (3 Ed.), secs. 131a, 131b, p. 92, n. 3, 93, n. 4. But consult 1 Tiffany, Real Prop., p. 511.

The contentions involving the last clause of the grant apparently arise from the use of the word "revert" and the omission of a modifying word, such as "surviving" or the like, in connection with "heirs at law" of John Herriman—"but should the said Celeste B. Curd die without bodily heirs, as aforesaid, surviving her, then the title to the above described real estate, at her death, shall revert to and vest absolutely in the heirs at law of the said John Herriman . . ." However, we think this clause embraced the contingencies of the event and the persons; i. e., of Celeste B. Curd dying without bodily heirs and ascertaining the membership of the class "heirs at law" in whom "then," "at her death" "title" would "vest absolutely."

We have hereinbefore considered the grant to the "heirs at law" to be not a technical reversion. The grant, upon a contingency, to grantor's "heirs at law," he being living, was necessarily effective, if ever, in the future. The word "revert" was not used in its technical sense but meant "pass" or "go." [Simmons v. Gunn, 156 Va. 305, 309(7), 157 S. E. 573, 574(6), and cases cited; Warrum v. White, 171 Ind. 574, 578, 86 N. E. 959, 960; Johnson v. Askey, 190 Ill. 58, 62, 60 N. E. 76, 77; Mastellar v. Atkinson, 94 Kan. 279, 282, 146 Pac. 367, 368(3).]

From the fact that the membership of the class "heirs at law" was first determinable upon the death of John Herriman and the estate might then vest under the rule of law favoring the early vesting of estates [the reason more frequently assigned—Annotation, involving wills, 49 A. L. R. 177, II, a, 1; Gardner v. Vanlandingham, 334 Mo. 1054, 1061(2), 69 S. W. (2d) 947, 950(4)], it does not necessarily follow that those constituting said classes at said time became vested with a present nondefeasible estate to be enjoyed and possessed in the future [consult Annotations, 49 A. L. R., p. 180(2), 227(IV); 250-(V); L. R. A. 1918E, 1097; Ann. Cas. 1917A, 863, 864; Eckle v. Ryland, supra]. Cases presenting issues with respect to vested or contingent remainders and the time for ascertaining the membership of a class of remaindermen involve grants variously worded and make manifest the necessity for determining the intent of the grantor from the particular passage or passages and facts involved. Our review of the authorities has impressed us that grant after grant refers to the "property," and many cases go off on the proposition that the contingency refers to the time of enjoyment and possession rather than the time the estate therein vests. Such cases are not applicable here because the expressed subject matter of the clause, and consequently the contingency, is "the title to the above described real estate;" and with the grantor thus expressly stating the "estate" is involved in the contingency, we are precluded from holding that he had reference to a contingency impliedly involving only the time when the remaindermen were to come into the enjoyment and possession of the property. The estate in remainder was a substitutional

fee simple. If the "heirs at law" had a vested fee simple upon the death of John Herriman the word "absolutely" added nothing to this estate upon the death of the life tenant; but if their estate was contingent until the death of the life tenant the use of the word is in conformity with the other provisions of the grant as denoting a greater "title" than theretofore possessed.

For the purposes of this review it may be conceded that the word "then" ordinarily performs the function of a conjunction and has reference to the event—"in that case" [Dunbar v. Sims, 283 Mo. 356, 361(II), 222 S. W. 838, 839(2); Chew v. Keller, 109 Mo. 362, 368, 13 S. W. 395, 396; cases involving materially different provisions and holding the contingency referred to the enjoyment and possession; Annotations, 49 A. L. R. 182(9); 33 L. R. A. (N. S.) 13(9); Ann. Cas. 1917A, 863]. The instant grant employs the words "then" "at her death." If they are to be given their natural effect when read with the other provisions of the grant, they refer (as in the Eckle case) to the "title" vesting in the "heirs at law," "at her death." Landers Inv. Co. v. Brown, 300 Mo. 348, 355, 358(II), 254 S. W. 14, 15, 16(4), involved a grant to L. M. S. for life, then to B. S. for life, if she survive L. M. S., "then upon the death of" L. M. S. and B. S., to L. M. S.'s heirs. The court considered the "heirs" took as purchasers and "comprehended those persons who, 'upon the death of Lizzie M. Sitter and Blanche Sitter,' would have been the former's heirs had the latter predeceased her." That case, as we read it, did not involve the detailed facts here presented. See Wilkins v. South, 7 Term. R. 320—"then after his decease;" mentioned in Chism v. Williams, 29 Mo. 288, 296.

The consideration was love and affection and from the grant it extended to the "heirs at law." We think the instant grant manifests grantors' intention that, at the termination of the life estate, persons of the owner's blood take his title and enjoy and possess his property, and a desire to avoid technical rules involving the title to real estate, having their foundation in ancient feudal tenures and ancient rules for the construction of instruments creating remainders, involving refinements of learning, to the end that unknown strangers to the owner's blood be excluded from coming into the enjoyment and possession of his property at the termination of said life estate; all of which is in harmony with the recited consideration of love and affection. The placing of emphasis on the word *"only"* in the grant of the life estate does not militate against our conclusions.

The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.