Edwin C. **PIXLEE** and Virginia M. Pixlee, his wife, Franklin Pixlee and Eva W. Pixlee, his wife, Plaintiffs,

v.

Carrie **PETTY**, Hugh H. Pixlee and Norma H. Pixlee, his wife, Ethel Pixlee Steele and C. B. Steele, her husband, and Rillamae Pixlee Pierce and D. A. Pierce, her husband, Glorietta Pixlee Robnett, John Waller Pixlee, Jr. and Mrs. J. W. Pixlee, Jr., his wife, Marjorie Bohart Phillips and Edwin C. Phillips, her husband, Kate Nancy Bohart Hughes, and Charles E. Hughes, her husband, Bird B. Hockaday, Edna Richmond, Walter Curtis Robertson, Pixlee Petty and Opal Rice Petty, his wife, Leona Petty Breckenridge and J. B. Breckenridge, her husband, Gerald Cross, Administrator of the Estate of Maude Pixlee Shoemaker, deceased, and Margaret Bohart Moberly and Richard Robertson, Defendants-Respondents,

Thomas J. Shoemaker, Defendant-Appellant.

No. 44285.

Supreme Court of Missouri.

Division No. 1.

Jan. 10, 1955.

Clay C. Rogers, Kansas City, for appellant. James W. Benjamin, Rogers, Field & Gentry, Kansas City, of counsel.

Alan F. Wherritt, Liberty, Conn Withers, Liberty, John B. Ewing, Independence, for

respondents. Wherritt & Turpin, Withers & Kiser, Liberty, of counsel.

VAN OSDOL, Commissioner.

This is an action instituted by certain of the collateral kindred of William T. Pixlee, deceased, to partition described lands which had been owned by decedent and which he had devised by his will of May 31, 1921. An issue of title to the described real estate was raised by the answer of defendant, Thomas J. Shoemaker, surviving husband of the sole surviving child of testator.

Defendant Shoemaker alleged himself to be "the owner in fee simple title and (that he) is entitled to the immediate possession of all the lands described in the petition, and that the same is not subject to partition." His claim of title is based on the theory that his late wife Maude, sole surviving child of testator, had been devised an estate in fee simple, and that he (as the heir of his deceased wife) inherited his wife's property. The trial court in its interlocutory order found that defendant Shoemaker had no interest in the described land; that testator's sole surviving child, Maude, was devised but a life estate; and, furthermore, that her interest had been so adjudicated in a former partition action. Defendant Shoemaker has appealed.

So, in this case, as indicated supra, we have the primary question—what estate was devised to the daughter Maude? (A secondary question, unnecessary to a decision, is also presented—if the will were so interpreted that a conclusion were drawn that testator intended the daughter Maude should have an estate in fee simple, is the claim of title of her surviving husband, defendant Thomas, who, as her heir, stands in privity to her, barred by the doctrine of *res judicata*?)

The paragraphs of the will pertinent to its interpretation are as follows,

"3. I give and devise to my said wife, all my real estate, for and during the term of her natural life, in lieu of dower and homestead and other marital rights. But at any time she desires to do so, and Hugh Pixlee agrees she may sell my home place * * * and the Chanslor farm * * * and the proceeds shall be added to the trust fund created in clause 5 hereof.

"4. I give and devise all my real estate, subject to said life estate, and the right in my said wife and said Hugh Pixlee, to sell the home property and the Chanslor farm, to my only living child, Maude Pixlee, and to her bodily heirs. If she should die without leaving bodily heirs, then I give and devise the remainder which would go to said bodily heirs, if such existed, to my brothers and sisters, in fee simple, in equal shares, the descendants of such of my brothers and sisters as may be dead at the date of the death of my said daughter, to take per stirpes the share such brother or sister would have taken, if living. If my said daughter should die prior to the death of my said wife, then possession of the real estate in this clause given to such devisees is postponed until the death of my wife. * * * *"

William T. Pixlee, testator, died November 28, 1921. He was survived by his widow Eva; by his daughter Maude; and by nine brothers and sisters, or their descendants. The widow died December 3, 1922. Testator had been possessed of a comparatively large estate consisting of realty and personalty of which he disposed in his will. At the time the will was made, testator's daughter Maude was unmarried. She was then forty-three years old. She afterwards married defendant-appellant Shoemaker. No child was born to the marriage. She died December 23, 1950.

December 29, 1921, testator's widow Eva renounced the will and elected to take a child's part, amounting to one-half of her late husband's estate.

January 4, 1922, the widow Eva instituted an action in partition involving the real property devised by the testator, including the described lands involved in the instant action. By the interlocutory order and decree entered in the former partition case, it was ordered that all of testator's real

estate (except certain "College Park lots") should be divided, in kind, into two equal parts, the one-half part to be set off to the widow Eva and "the other one half thereof in value to Maude Pixlee 'for life, said half of the same to vest in· her bodily heirs, if she die leaving any, and if she die without bodily heirs, then the same to vest in the brothers and sisters of William T. Pixlee, or the descendants of such brothers and sisters as may be dead, at the death of said Maude Pixlee such' descendants of such brothers and sisters as may be dead, to take per stirpes the share such deceased brother or sister would have taken if living." ·

In the interlocutory order and decree entered February 17, 1954, in the instant case, it was found as follows,

"That under the law and the evidence and as determined in said Case No. 9432 (the former partition case) * * *, upon the death of William Thomas Pixlee his daughter, Maude Pixlee Shoemaker, received a life estate in the land above described * * and upon her death, without bodily heirs, the surviving sister of William Thomas Pixlee, defendant Carrie Petty, and the descendants of the brothers and sisters of William Thomas Pixlee who were deceased at the time of the death of Maudè Pixlee Shoemaker, * * * received 'title to the land * * * in fee simple, in common, in the shares and undivided interests hereinafter set out in this decree, and that the defendant, Gerald Cross, Administrator of the estate of Maude Pixlee Shoemaker and defendant, Thomas J. Shoemaker, her surviving husband, did not become entitled to any interest in the real estate described herein upon the death of the said Maude Pixlee Shoemaker, nor are either of them now entitled to any interest in said land, nor did defendant, Thomas J. Shoemaker have any interest in said real estate during the life time of his deceased wife."

Herein upon this appeal, defendant-appellant Shoemaker contends the trial court

erred in holding that Maude Pixlee Shoemaker had only a life estate. He contends that she was devised an estate in fee simple. Defendant-appellant argues that the clause, "If she should die without leaving bodily heirs" was referable to an occurrence of that possible event prior to the death of the testator. And defendant-appellant also contends the trial court erred in not recognizing what defendant-appellant says is "settled law which favors vesting of an estate in fee as soon as possible." Respondents on the other hand contend that the will considered from its four corners discloses the testator's intention to create successive life estates in his wife Eva and his daughter Maude with a contingent remainder in the bodily heirs of the daughter; or in the event of the death of the daughter without bodily heirs, then an alternative remainder over to testator's collateral kindred, respondents herein.

Having examined the whole will and having carefully considered all' of ·its plain provisions pertinent to our question, particularly the plain but·technical language of Paragraphs Three and .Four and its statutory effect, we have found no ambiguity in the will nor have we a doubt as to testator's true intent and meaning.

Directing our attention to Paragraph Three of the will, we see that' testator devised an estate for life to his wife. In Paragraph Four, testator provided that, subject to the life estate in the wife, his real estate .was to go to his only living child Maude and to her bodily heirs. Here at the very beginning of Paragraph Four it is to be plainly seen testator contemplated that Maude might survive not only himself, testator, but also the widow Eva; and he gave her no estate in fee simple with limitation ·over upon her death without issue. See the devise of a fee simple estate to testator's son Hugh in Palmer v. French, 326 Mo. 710, ·32 S.W.2d 591. (Testator also contemplated that his daughter might die prior to the death of his widow; and in such event [and in the event the daughter died without leaving bodily heirs] the enjoyment of the fee ·simple estate in remainder given, in such event, by Paragraph

Four to his brothers and sisters or their descendants, was to be postponed until the death of the widow.)

As stated, testator did not use language in his devise to Maude which would ordinarily manifest an intention to create an absolute estate. He used language such as formerly, at common law, would have created an estate in fee tail, and plainly provided that, *if Maude should die without leaving bodily heirs,* there was to be a remainder over to testator's brothers and sisters (or their descendants), in fee simple.

**■** Cases cited by defendant-appellant are not applicable, which cases recognize an auxiliary rule of construction of wills (or deeds) that where there is a doubt in the phraseology of a will as to whether an interest is vested or contingent, the doubt should be resolved in favor of a vested estate. Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424; Garrett v. Damron, Mo.Sup., 110 S.W.2d 1112; Tindall v. Tindall, 167 Mo. 218, 66 S.W. 1092. Consult the precise explanation of the Tindall case in Gillilan v. Gillilan, 278 Mo. 99, at page 116, 212 S.W. 348, at page 351. Neither are those cases applicable which treat with the rule that a devise of an absolute estate is not to be limited, qualified or cut down to an estate for life by a gift over upon the occurrence of the contingency of death without issue, except by a clear and certain manifestation of the devisor's intention. See Rothwell v. Jamison, 147 Mo. 601, 49 S.W. 503; and Kindred v. Anderson, 357 Mo. 564, 209 S.W.2d 912, and cases therein cited, including Palmer v. French, supra.

**■** Of course, testator could not create an estate in fee tail in contravention of statute, but he could utilize the technical language at common law creating an estate in fee tail and avail himself of its statutory significance. By the devise in language formerly used in creating an estate in fee tail, testator doubtless had in mind (through the advice of his counsel and scrivener, the able and distinguished member of the Missouri Bar, Martin E. Lawson) the effect of Section 442.470 RSMo 1949, V.A.M.S., which Section provides that in cases where, by the common or statute law of England, any person might become seized in fee tail of any lands, such person, instead of being seized thereof in fee tail, "shall be deemed and adjudged to be, and shall become, seized thereof *for his natural life only*" (our italics); and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first devisee in tail, first pass according to the course of the common law. Emmerson v. Hughes, 110 Mo. 627, 19 S.W. 979; Davis v. Stevens, 344 Mo. 24, 124 S.W.2d 1132; Byrd v. Allen, 351 Mo. 99, 171 S.W.2d 691; Mattingly v. Washburn, 355 Mo. 471, 196 S.W.2d 624.

**■■** While testator devised a life estate to his wife, the effect of the devise to Maude and her bodily heirs was, by force of the statute, to create in her a life estate with a contingent remainder in fee simple in her bodily heirs—a remainder contingent upon the event of their being in being at the time of her death. Emmerson v. Hughes, supra. There is no positive law which prevents a testator from creating successive life interests, provided the rule against perpetuities has not been violated. Dodd v. McGee, 354 Mo. 644, 190 S.W.2d 231; O'Brien v. Sedalia Trust Co., 319 Mo. 1001, 5 S.W.2d 74. No doubt contemplating that his daughter Maude might not marry, or, if she married, that she might die without leaving bodily heirs, testator clearly provided for such contingencies. He devised an alternative remainder in fee simple over to his brothers and sisters, or their descendants, per stirpes. Thus it was testator devised his daughter Maude an estate for life, and created alternative remainders in such a way that one would take effect if the other did not. Such remainders are sometimes referred to as "remainders on a contingency with a double aspect." Vol. 4, Thompson on Real Property, Permanent Edition, § 2223, pp. 761–762; Vol. 2, Tiffany, The Law of Real Property, 3d Ed., § 333, pp. 55–56; Norman v. Horton, 344 Mo. 290, 126 S.W.2d 187, 125 A.L.R. 531; Byrd v. Allen, supra; Coley v.

Lowen, 357 Mo. 762, 211 S.W.2d 18; Brittin v. Karrenbrock, Mo.App., 186 S.W.2d 35.

We hold the trial court correctly determined testator's daughter had but a life estate.

The interlocutory order and decree should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All concur except WESTHUES, J., not sitting.